The opinion of the court was delivered by
Brewer, J.:
This was an action of replevin, brought by plaintiff in error (plaintiff below) against the defendant, who was sheriff of Crawford county, to recover possession of a stock of goods held by him under an execution against the husband of plaintiff. The case was tried before a jury, which returned a general verdict for the defendant.
*330 x properly™™' fusea. *329 Only two questions are presented by counsel for our consideration. When the case was called for trial, counsel for plaintiff presented an affidavit for a continuance, made by the husband of plaintiff, which stated that plaintiff was in such delicate health that she could not with safety be present in court during the term and undergo the excitement and fatigue necessary and incident to a trial; that she was just convalescing from an attack of the measles, and that her presence was necessary not only to give testimony, but to assist counsel in the proper presentation of her ease; that she would, if present, testify that she owned the goods in controversy, and that her husband was in charge of them and acted in the business simply as her agent. The facts of her proposed testimony were given in detail, but it is unnecessary to' state them at length. The affidavit also stated that the husband made the affidavit because the mental and physical condition of plaintiff was such that it was not proper for her to make it. Attached to this affidavit was the certificate of a physician that he had carefully examined the plaintiff, found her convalescing from an attack of the measles, and believed that it would be dangerous for her to attend court. Both affidavit and certificate were signed and filed on the 12th day of April. The next day the application for a continuance came on for a hearing, and the court permitted the defendant *330 to introduce a number of affidavits: those of two witnesses, that the physician whose certificate had been attached to plaintiff’s affidavit had told them that plaintiff was not sick; of three witnesses, who testified that they had seen plaintiff promenading the streets within the last few days looking as well as she had for a year past; of one witness, that plaintiff’s agent and husband, who made the affidavit for a continuance, had told him a few days prior to the commencement of the term that the case would be kept in court for several years; of one witness,- that she met plaintiff and conversed with her on the evening of April 12th, and plaintiff informed her that she was well excepting a slight cough, and that plaintiff was around attending to business; of another witness, that she was at the residence of plaintiff in the afternoon of April 12th, and that plaintiff was moderately well, going around the house as usual. Upon these affidavits and this showing the court overruled the application for a continuance; and this is the first error alleged. It is insisted that defendant had no right to file counter affidavits, and even if he had such right, he could not impeach the testimony of the physician by statements of non-professional men, but that the court should have sent other physicians to examine and see if the ■certificate already offered was correct, or a sham. We think the ruling of the district court must be sustained; for while it may be conceded that ordinarily applications for continuance are to be determined ■upon the showing made by the party applying therefor, (Wicks v. Weber, 64 Ill. 167; Whig Co. v. Tillson, 67 Ill. 351,) yet this rule does not prevent the court from making-further inquiry or receiving further testimony whenever it is suggested that an imposition is being practiced.
It has been repeatedly held by this court, that trial courts have large discretion in the matter of continuances, and this discretion is broad enough to permit the court, of its own motion or on the suggestion of the adverse party, to inquire so far as to prevent any imposition or fraud. No party in a civil action can tie up the powers of the court by affidavit or *331 certificate. Take an extreme case, and yet one not much stronger than the case at bar: Suppose an affidavit were filed that the plaintiff was at home in bed, sick and delirious, and the opposite party should insist that at the very moment of filing this affidavit the plaintiff was in an adjoining room, ready to be offered as a witness if needed, will it be urged that the court was powerless to inquire as to this fact, and bound to let the rights of the adverse party be trampled upon by ■such a perj ury ? It seems to us that the question carries its own •answer, and that the powers of the court are ample to protect -the rights of both parties. Here the affidavit filed by the plaintiff, and made by the plaintiff's husband, states that it is ■not made by her, because her mental and physical condition was such that it would be improper for her to make such an •affidavit; while from other witnesses it appears that on the very day she was about the house attending to ordinary household duties, and stating to one witness that she was well with ■■the exception of a slight cough; that during the immediately preceding days she had been promenading up and down the •streets of the city in apparent health; that her husband, who presents himself as the party managing the business, the party in immediate possession of the goods the subject of the litigation, threatens to keep the case in court for a series of years; and that the physician who makes the certificate of her ill-health, on the very day of his certificate states that she is well. It does not appear that she asked for time to make a further showing, or was hindered in any way from making it ■clear to the court that her application was true, and made in good faith. She was content to submit that application upon the showing already made; and the counter testimony which was offered so plainly disclosed that the application was not made in good faith, and was based upon falsehood, and was made simply to protract litigation, and wear out thereby the opposite side, that the court properly refused to sustain it.
*332 'rigMyre-’ *331 The other error alleged is this: On the trial an execution against the husband of plaintiff, reciting a judgment against him on the 22d day of January, 1881, was offered and received *332 in evidence, and also a journal entry of the judgment entered and signed as of that day. On the motion for a new trial, the plaintiff offered the affidavit of two of her attorneys that the journal entry had not been in fact written out on the journal until pending the present trial, and after the execution had been offered and received in evidence. The motion for a new trial was overruled. This ruling was unquestionably correct. The record of the judgment could not be overthrown in any such way. Upon the face of the record everything was correct. Such a record imports verity. The journal was duly signed by the same judge who was presiding on the present trial, and if any fraud was being perpetrated or attempted, he would have known it. Doubtless if affidavits had been filed, charging that no judgment had ever been rendered, or that the clerk had made a fictitious entry, or that any other fraud was being perpetrated on and through the records of the district court, the judge might properly have postponed the hearing of the motion for a new trial until such time as in direct and proper proceedings the pretended judgment could have been set aside; but when upon its face a record is complete and perfect, it imports absolute verity, and cannot be set aside by mere affidavits that it ought not to be as it is, or that it was in fact made at a time different from that at which it purports to have been made.
These are the only questions presented by counsel; and in them appearing no error, the judgment must be affirméd.
All the Justices concurring.