THE STATE OF KANSAS v. GEORGE W. ROGERS.
No. 10357.

1. CRIMINAL CASE— *Continuance, no Abuse of Discretion in Denying.* In a prosecution for a felony, the defendant applied for a continuance on the ground of his sickness and disability. The good faith of the application was challenged by the prosecution, and on its request physicians were appointed by the court to visit the defendant and report upon his condition, which they did; and they were examined on the subject orally in open court. Afterward, other physicians were appointed to treat the defendant until ready for trial, and to see that nothing was given him except under their direction; and they took charge of the defendant accordingly for some days, when, the case being again called, another application for continuance was made, which, upon hearing evidence, the court overruled, finding that the defendant was able to be placed upon trial, and was in a fit and suitable condition physically to be present. *Held,* That there was no abuse of discretion in overruling the application for a continuance.

2. ——— *Evidence on Former Trial, Admissible.* On a second trial of the defendant upon an information for a felony, the state offered to read, from a writing purporting to be a bill of exceptions, taken on the first trial, the testimony given by the defendant in his own behalf. It was admitted that the document was such bill of exceptions, and it is stated in the record that counsel "reads to the jury the following testimony of G. W. Rogers, which is, in words and figures, as follows, to wit." *Held,* That the evidence was sufficiently identified, and was admissible.

3. INSTRUCTION, *not Erroneous.* The following instruction was not erroneous, viz.: "You are instructed that, before you are warranted in finding the defendant guilty, each of you must be able to truthfully and conscientiously say that his guilt has been established by the evidence in the case beyond reasonable doubt; and if, after a consideration of the whole case, and consulting with your fellow jurymen, any one of the jurors entertains a reasonable doubt as to whether defendant's guilt has been established, you cannot convict the defendant; but you cannot acquit the defendant unless all the jurors entertain a reasonable doubt."

4. JURY—*Desirability of Agreement.* The practice of calling in a jury and lecturing them upon the desirability of an agreement is not to be commended; but the oral remarks of the court to the

jury in this case were not so objectionable as to warrant a reversal on that ground.

5. DISTRICT COURT—*Adjournment.* The district court may adjourn to a time beyond the commencement of the regular term in another county of the same district, and this, in the absence of any showing that the court was held in both counties at the same time, does not invalidate the proceedings at such adjourned term.

6. APPEAL—*Presumption.* The presumption, in the absence of anything in the record, is that the court discharged its duty in admonishing the jury as required by the statute upon each separation.

## Appeal from Reno District Court.

THE defendant was convicted in the district court of Harvey county of burglary in the second degree, the crime being committed on the night of March 23, 1893, by breaking into a building occupied as the court-house of said county with intent to set fire to, burn and destroy the books and records of said county. After sentence he appealed to this court, where the judgment was reversed because of the admission of incompetent testimony. The report of the case contains a summary of the evidence. (54 Kan. 683–698.) A change of venue was afterward granted, and the case was sent to Reno county for trial. It was called for trial May 13, 1895. The defendant applied for a continuance on the ground of the absence of witnesses, and the court held that the showing was sufficient; thereupon the state consented to the reading of the evidence contained in the application as the depositions of the absent witnesses, and a jury was impaneled and sworn to try the cause, a plea of not guilty having been entered. No further proceedings were had until the next day, when, the case being called, it was announced that the defendant was sick, and unable to attend the trial. His home was at Newton, where he went with Willard Kline, one of his attorneys, on the evening of May 13. The state requested the court to

appoint three physicians to go to Newton and examine
the defendant and report his condition ; and thereupon
the court appointed Doctors Klippel and Colladay, of
Hutchinson, and Doctor Boyd, of Newton, to perform
that service, and the court adjourned until May 15.
On that day, the physicians and Willard Kline were
called and examined as witnesses respecting the phys-
ical and mental condition of the defendant, and the
court found therefrom that the defendant was able to
be present in court, and that his physical condition
was not such as to prevent or excuse him from attend-
ing, and the sheriff was ordered to bring him into
court on May 16, at 9 o'clock A. M.   When that time
arrived, counsel for defendant again applied for a
continuance on the showing already made and the
affidavit of Stella E. Rogers, wife of the defendant,
which was read.   Thereupon the sheriff was ordered
to take charge of the defendant with such deputies as
he might choose, and Doctors Sidlinger, Shearer and
Wilson were appointed to treat him until ready for
trial, and to see that nothing was given him except
under their direction.   The court adjourned to May 17,
and then again to May 20, which was the last day of
the regular term, as the law fixed May 21 as the be-
ginning of the regular term in Harvey county, in the
same judicial district.   On May 20, the court again
adjourned to May 22, when the case was called, but
it was objected on behalf of the defendant that the
term had expired by law, and another term had
commenced in Harvey county ; but the objection was
overruled for the reason stated orally by the judge,
and not otherwise appearing, that he opened the court
in Harvey county on May 21, and adjourned the same
until June 3, 1895.   The defendant and his attorneys
again applied for a continuance on the ground of the

inability of the defendant to be present and advise
with his counsel and direct the management of the
case, and in support thereof offered another affidavit
of said Stella E. Rogers, and the state presented the
affidavits of Doctors Wilson, Klippel, Colladay and
Sidlinger in opposition thereto ; and thereupon the
court found that the defendant was able to be placed
on trial, and was in a fit and suitable condition phys-
ically to be present, and the application for a contin-
uance was overruled, and the case proceeded to trial.
It appears that the defendant occupied a cot during
the trial, and spoke to his counsel only in whispers,
and that, while testifying as a witness, his answers
were repeated to the jury by his counsel ; but it was
claimed by the state, and the evidence heard on the
application for a continuance strongly tended to show,
that the sickness of the defendant was feigned, and
not real, and that his disability was simulated, although
he was really weak, and not in good health. The trial
proceeded until May 25, when the court instructed the
jury, and the case was then argued by counsel and
submitted. On May 28, after the jury had deliberated
24 hours, they were brought into court, and the judge
made remarks orally, which were afterward reduced to
writing by him, as follows :

"Gentlemen of the jury, the duties of a juror in
every case are very arduous, and you have been out
in this case for 24 hours, and I suppose that I need
not remind you that it is a matter of great public im-
portance that this case be decided. You, of course,
know yourselves that it has been a great expense to
the public to try this case ; and if you should disagree
and another trial should be had — all the expense of
this trial being lost, and another trial being had at
the same expense — after the trial was through, and
the jury impaneled to try the case again would prob-
ably have no more evidence than has been presented

to this jury, and there is no reason why this jury should not decide this case with the same fairness and correctness that any other jury should decide it. I feel, therefore, that I could not discharge you as jurors in this case without requiring you to a much greater effort to agree upon your part upon a verdict than you have made up to date. I suppose, as you stated this morning, there are no questions of law about which the jury disagree. If there are any such questions, you can make them known to the court. The court grants the defendant an exception to all the remarks made by the court to the jury. Of course, gentlemen of the jury, as stated in the written instructions, you are the sole and exclusive judges of all the facts in the case and the credibility of the witnesses, and I have no desire now, in anything I have said, to invade the province of the jury.''

On May 29, the jury returned a verdict of guilty of burglary in the second degree, and on May 31 the defendant filed a motion for a new trial, which was heard and overruled on June 1, and the defendant was sentenced to imprisonment at hard labor in the penitentiary for the term of five years, and from this judgment he appeals. The opinion herein was filed January 11, 1896.

*Wall & Brooks*, and *Willard Kline*, for appellant.

*F. B. Dawes*, attorney general, and *C. E. Branine*, county attorney, for The State ; *Bowman & Bucher*, of counsel.

The opinion of the court was delivered by

MARTIN, C. J. : I. It is strongly urged by counsel for defendant that the court erred in refusing to grant a continuance on account of his sickness and disability. The embarrassing and delicate duty of passing upon the defendant's physical and mental condition was devolved upon the court. The proceedings were

very unusual, but we cannot say that they were not justified by the situation, the good faith of the application for a continuance being challenged by the state. In *The State v. Rhea*, 25 Kan. 576, 579, it was declared that

"Continuances are largely within the discretion of the trial court; and, before error can be affirmed, it must be shown that such discretion has been abused. It is not enough that conditions and circumstances are shown which would justify a postponement; there must be those which compel such postponement. Any uncertainty or doubt in this respect must be resolved in favor of the ruling below. Abuse of discretion is never presumed; it must be proved."

See, also, *Cushenberry v. McMurray*, 27 Kan. 328; *Krapp v. Hauer*, 38 id. 430; and *Harlow v. Warren*, 38 id. 480, where applications were made for continuances on the ground of the sickness of a party. In *Hottenstein v. Conrad*, 9 Kan. 435, 440, 441, it was held that whatever fact a court may inquire into on a motion it can also determine, and its determination establishes the fact for all the purposes of the motion. Upon the record, we cannot say that the court erred in its conclusion, nor that it abused its discretion in refusing to grant a continuance.

II. It is insisted that the court erred in admitting testimony over the defendant's objections. The prosecution offered to introduce in evidence some statements made by the defendant on the first trial by selecting and reading portions only of what was claimed to be his testimony, as shown on certain designated pages of the bill of exceptions. To this his counsel objected that a part of such former testimony could not be introduced against him, but that it must all go to the jury, and the court took this view of the case; and counsel for the state then proceeded, under

protest, to read it all from the bill of exceptions tran-
scribed from the stenographer's notes.   The defend-
ant then interposed the general objection that the
testimony was incompetent, irrelevant, and imma-
terial.   The attorney for the state thereupon inquired
of counsel for the defendant if he would admit that
he was reading from the bill of exceptions filed by the
defendant in the former trial, and counsel responded
in the affirmative, but said that he still objected to
the evidence as incompetent, irrelevant, and imma-
terial, which objection was overruled ; and it is then
stated in the record that counsel "reads to the jury
the following testimony of G. W. Rogers, which is in
words and figures as follows, to wit."   And appar-
ently all the testimony of the defendant on the former
trial was here read to the jury.   Doubtless, the testi-
mony of a defendant in a criminal case in his own be-
half on a former trial or examination may be offered
in evidence against him, and the state is not required
to read the whole of his testimony ; but if that which
is offered relates to any particular subject or fact, then
all bearing on that subject or fact should be placed
before the jury.   (*The State v. Sorter*, 52 Kan. 531,
540.)   But the defendant had the benefit of the ob-
jection against the reading of a part only.   The gen-
eral objection made, however, by the defendant was
not obviated by that circumstance.   The regular
method of introduction of such evidence is to call the
stenographer who transcribed the testimony from his
notes, or some other person who heard the witness
testify and knows that the bill of exceptions contains
a correct statement of what he said from the witness-
stand, as in *Solomon Rld. Co. v. Jones*, 34 Kan. 443,
460.   But where it is admitted, as in this case, that
the document produced is the bill of exceptions filed

by the defendant in the former trial, and the record shows that counsel for the state reads to the jury the testimony of the defendant, any further identification of the testimony is unnecessary.

It was the theory of the prosecution that the crime was conceived by the defendant, and that he induced George H. Shirley to manage the destruction of the records, and that Shirley employed Harris, English, and Riffle, three professional burglars, to do the work. G. O. Smith was working in Matthews' restaurant, which kept open day and night, and which Shirley often frequented in the night season ; and Smith was called as a witness to testify to Shirley's conduct at the restaurant early in the morning that the offense was committed. The objection made to this testimony is that the crime had already been committed, and that evidence of Shirley's conduct thereafter was inadmissible against his codefendant, who was being tried separately ; but the record shows that the peculiar conduct of Shirley testified to by the witness was about four o'clock in the morning, and this is just about the time that the professional housebreakers were engaged in their desperate business. The defendant also complains of the admission of the testimony of Thomas Carroll, who had been solicited by Shirley to assist him in destroying the records. It is said that there was no proof that any conspiracy had been formed at that time to which Rogers was a party. He testified that Shirley said he would see his partner, and it is claimed that this was inadmissible for the purpose of showing that a conspiracy then existed. It is true that such testimony would not be admissible for that purpose, but evidence was given on the trial tending to show that the conspiracy between the defendant and Shirley was formed before

24—56 KAS.

that time.   The testimony of the witness H. W. Black, as to a conversation with Shirley at Wichita, wherein Shirley inquired if he knew where he could " get a man to do some dirty work," is complained of, but it was admissible for the reasons above indicated ; and these objections to the testimony of Smith, Carroll and Black were substantially disposed of when the case was here before.

III.  The next complaint respects the giving and refusal of instructions.   No. 24, as given, reads as follows :

" You are instructed that, before you are warranted in finding the defendant guilty, each of you must be able to truthfully and conscientiously say that his guilt has been established by the evidence in the case beyond reasonable doubt ; and if, after a consideration of the whole case and consulting with your fellow jurymen, any one of the jurors entertains a reasonable doubt as to whether defendant's guilt has been established, you cannot convict the defendant ; but you cannot acquit the defendant unless all the jurors entertain a reasonable doubt."

The last clause is severely criticised, counsel saying that this would compel a person charged with the commission of an offense, in order to secure an acquittal, to establish a reasonable doubt of his guilt in the mind of each juror ; and they asked an instruction to the effect that if a single juror entertained a reasonable doubt, then the defendant must be acquitted.   That the instruction asked was erroneous is settled by the case of *The State v. Witt*, 34 Kan. 488, and we can conceive of no valid objection to the instruction as given, and this notwithstanding the case of *Stitz v. The State*, 104 Ind. 359, 362.   In that case the court below instructed the jury that " while each juror must be satisfied of the defendant's guilt beyond

a reasonable doubt to authorize a conviction, such reasonable doubt, unless entertained by all the jurors, does not warrant an acquittal''; and the Indiana supreme court concludes, from a process of reasoning incomprehensible to us, that ''this must have induced the jurors to think that, unless all concurred in entertaining a reasonable doubt, the verdict should be *against the defendant.*'' We cannot see that it meant anything more than that the verdict, either of conviction or acquittal in a criminal case, must be the result of the concurrence or running together of the minds of all the jurors. If the minds of the jurors do not so concur, there must be a disagreement. But it is hardly necessary to instruct an American jury touching their right to disagree, for this is universally understood. Some of the other instructions given are criticised, it being said that the court assumed the guilt of Shirley, which was a step necessary to establish the guilt of the defendant; but we do not think that the language of the court is subject to this construction. And there was no error in the instruction that, in determining the weight and credibility of the evidence of the defendant, they should consider his motives and his testimony the same as the other witnesses. If the instruction had singled out his motives alone, perhaps the word ''may'' ought to have been used rather than ''should''; but when the defendant was referred to only as one of the witnesses, and his motives were spoken of in the same connection, we cannot say that the language used was erroneous or prejudicial. The defendant asked certain instructions to the effect that, if the facts and circumstances relied upon by the state to establish guilt could be reasonably explained upon the theory of the guilt of some person other

than the defendant, then he must be acquitted. This would have been error prejudicial to the state, for the proof of the guilt of Harris, English, Riffle and Shirley was much more direct and positive than the evidence of the guilt of the defendant; and it was necessary to prove their guilt before that of the defendant could be established. This, however, would constitute no good reason for the defendant's acquittal. Another instruction asked was upon the force of circumstantial evidence, and embodied the proposition that, in order to authorize a conviction, all the circumstances must be consistent with each other. Minor circumstances may be in evidence which are inconsistent with each other, and yet, if the jury can say upon the evidence that all the circumstances are consistent with the defendant's guilt, and inconsistent with any other rational conclusion, a jury may be warranted in returning a verdict of guilty. There was no material error in the giving or refusing of instructions, which seem to have been drawn carefully, with a view to the protection of all the rights of the defendant.

IV. The practice of calling in a jury and lecturing them upon the desirability of an agreement, although obtaining to a considerable extent in this state, is not to be commended. Jurors very generally understand the importance of agreement, and the inconvenience and expense of another trial. It is presumable that, in their arguments *pro* and *con* for many hours together, they chide each other sufficiently, and they ought not to be visited with a scolding by the court because differences of opinion still remain. In this case, however, the oral remarks of the court seem to have had no immediate or early effect, for there was no verdict until the next day; and upon considering

the language of the court, we cannot see enough in the remarks to induce us to believe that they were efficacious in producing an agreement. The language is compared with that used in *The State v. Bybee*, 17 Kan. 462, 464, 465, but there is little resemblance; and under the circumstances of this case we would not feel warranted in ordering a reversal, as the remarks contain nothing in the nature of instructions, unless at the close, and this was at most but a harmless repetition.

V. It is argued that the conviction was erroneous and illegal, because the term at which the trial commenced ended by operation of law, and another term commenced in Harvey county on May 21, 1895. It was held in *In re Millington*, 24 Kan. 214, that courts cannot be legally held at the same time in two counties of the same judicial district. But the district court of one county is not prohibited from adjourning to a time beyond the regular term in another county of the same district; (*The State v. Montgomery*, 8 Kan. 351, 356;) and in *The State v. Palmer*, 40 id. 474, 478, the court in one county was adjourned to a time one day subsequent to the commencement of the term in another county of the same district, which latter term was on the first day adjourned to a time beyond the adjourned term of the former county; and this practice was held proper. This case would be exactly in point here if the oral statement of the trial judge should be taken as evidence, but this is objected to. We hold, however, that, in the absence of any showing that the court was held in Harvey county on May 22 and the following days of the trial of this case, the defendant's objection to the regularity of the term cannot be sustained.

VI. It is said that the court erred in failing to admonish the jury on the adjournment of Saturday, May

25, as required by statute. The record does not affirmatively show whether the admonition was given or not; and the presumption, in the absence of anything in the record, is that the court discharged its duty in admonishing the jury before they were allowed to separate. (*Linton v. Housh*, 4 Kan. 535, 539 ; *The State v. Palmer*, supra.)

We find no substantial error in the record prejudicial to the defendant, and the judgment of the court below must be affirmed.

All the Justices concurring.