SCOTT v. CLEVELAND.

Opinion delivered October 27, 1913.

1. CONTINUANCE—ABSENT WITNESS—COUNTER AFFIDAVITS—DILIGENCE.— The party resisting a motion for a continuance will not be permitted to defeat the continuance by offering proof showing that the testimony of the absent witness, as set out in the motion, would not be given; but evidence may be given to show a want of diligence in procuring the attendance of the absent witness, or want of good faith in the making of the application, or the improbability that the proposed testimony can be obtained. (Page 14.)

2. CONTINUANCE—CHANGE OF MOTION BY COURT.—When appellant prayed a continuance because of the absence of a witness, and set out what he expected to prove by said witness, it is prejudicial error for the trial court, in response to an affidavit filed by the appellee, to change the statement of the absent witness to conform to the affidavit. (Page 15.)

Appeal from Clay Circuit Court, Western District; *J. F. Gautney*, Judge; reversed.

STATEMENT BY THE COURT.

This action was instituted in the Clay Circuit Court for the Western District, on the 19th of September, 1912, the appellee being the plaintiff below, and by the suit he sought to recover the sum of one thousand ($1,000) dollars, which he alleged was due him under a verbal contract made with appellants to find a buyer for and to sell the merchantable timber on a tract of land owned by appellants in that district of the county. It was alleged

that, in pursuance of that contract and agreement, appellant found a buyer for the timber and sold it for the sum of twelve thousand ($12,000) dollars, and that appellants closed a trade with the purchaser at that sum.

The appellants are husband and wife, and the title to the land was in the wife, and one of the issues in the case was whether or not the husband was the wife's agent and had the authority to contract with appellee for the sale of the timber, if in fact such a contract was made. But that question was submitted to the jury under proper instructions and need not be considered here; and it may be said that the whole case was submitted to the jury under correct instructions.

The appellants filed joint and separate answers and denied that they, or either of them, on the date alleged, or at any other time, agreed to pay appellee one thousand dollars, or any other sum, to find a buyer for the timber and denied that appellee found a buyer or that they accepted a buyer furnished by him.

Further answering, it was alleged that appellants were indebted to the appellee for certain services in connection with the sale of the timber in the sum of twelve ($12) dollars and a tender of that amount was made.

On the calling of the cause for trial, the appellants filed a motion for a continuance, as follows:

"Come said defendants, and ask the court to continue this cause till next term, and for cause say: That George Fleetwood is a material witness for them in this case, and he is not present on account of not being able to get here; that the said Fleetwood was crippled and has not been able, on account of his injury, to attend this term; that they have caused a subpoena to be served on the said Fleetwood; that the said Fleetwood is not absent by the consent, connivance or procurement of these defendants; that if present the said Fleetwood would testify as follows: 'Some time in the first part of 1911 I spoke to Mr. Scott, one of the defendants, about selling his timber and mill, and told him I thought I could sell it. He said John James, father-in-law of plaintiff, had the

agency to sell the property and that his agency would not expire until the first part of July, 1911. . He said further that if James did not sell it by that time he would give me a chance at it. During the time that James had the agency a Mr. T. E. Day from Indiana had looked over the timber with a view of buying it. Plaintiff, Ed Cleveland, and had shown it to him, as I understood, for his father-in-law, James."

" 'About the first of July defendant Scott came to me and placed the property in my hands to sell. I wrote to Day and made him a better proposition than the one James had made him. He agreed to come and look over it again. About the last of August I got a telegram from him saying he would be here the next day. I was living at Knobel at the time. It was the first day of the picnic held at Knobel and was about the last of August. Scott and his wife were at the picnic. I saw them and told them that Day would be here the next day to look over the timber. We agreed to try to get Cleveland to show him over again. We thought we could get Cleveland for $5 and I agreed to pay one-half of the amount. Day came the next morning. We got horses at the livery stable and started for Peach Orchard. Between Peach Orchard and Knobel we met Scott. He turned around and went back with us to Cleveland's. We stopped at Cleveland's and he was ready to go with us and show Day over the timber. I was along with them. Cleveland did not say anything to me about his having the agency for the timber, and, so far as I know, he had no correspondence with Day in regard to it. Day came to see the timber in response to my letters to him. The telegram was received the day before he came.'

"Defendants further stated they can not make this proof by any other witness, as the matters stated are peculiarly within the knowledge of the said Fleetwood, and that he believes said statements are true."

On hearing the motion for a continuance, the court permitted the appellee, over the objection of the appellants, to introduce an affidavit of George Fleetwood, on

account of whose absence a continuance was asked. The affidavit of Fleetwood, introduced over the objection of appellants, is as follows:

"I, George Fleetwood, do solemnly swear that I have read over the affidavit made by W. C. Scott, on motion for a continuance, which purports to be my evidence in the case of *Ed Cleveland* v. *W. C. Scott and Minta L. Scott;* that if present in court I would not testify that I understood that Ed Cleveland had shown the land to Mr. Day the first time for his father-in-law, Mr. James; nor that Doctor Scott and I agreed to try and get Ed Cleveland at a price of five dollars to show Day over the land; neither would I testify that Cleveland did not say anything to me about his having the agency to sell the timber on the land, for in fact Mr. Cleveland told me in January, 1911, that he had a right to sell said timber for defendants, Scotts."

The court, after hearing the affidavit read, struck from the motion for a continuance the following language: "As I understood for his father-in-law." Also the following language: "We agreed to try to get Cleveland to show him over again. We thought we could get him for $5 and I agreed to pay one-half of the amount." And the court, further considering the motion, inserted the following language: "that day" following the words, "anything to me," in the third paragraph. And also inserted immediately following the words, "Cleveland did not say anything to me about his having the agency for the timber," the following language: "but did tell me in January, 1911, that he had a right to sell the timber for defendants, Scotts." These changes were made over appellant's objections and exceptions.

Appellants' theory of the case is indicated by the statement of facts, which it was alleged could be shown by the absent witness, Fleetwood, and appellants further contended that appellee never at any time had an agency for the sale of the timber, and that when appellee showed the timber to Day, who subsequently became the pur-

chaser, he was acting for his father-in-law, James, whose agency to sell the timber expired July 1, 1911.

The question of liability was an exceedingly close one under the facts, but we can not say the jury's finding of liability is unsupported by the evidence, and we would not reverse the case, except for the error committed in revising the motion for a continuance.

*G. B. Oliver,* for appellant.

1. It was error to admit the affidavit of Fleetwood. It follows it was error to modify the motion for continuance. Kirby's Digest, § 6173; 67 Ark. 290; 16 Cyc 1202-2(a).

8. The declarations of a party in his own favor are not admissible. 92 Ark. 159.

*C. T. Bloodworth,* for appellee.

1. The counter affidavit of witnesses was admissible. 67 Ark. 290; 50 *Id.* 61; 57 *Id.* 297; 100 *Id.* 132.

2. Continuances are in the sound discretion of the trial court. 86 Ark. 317; 75 *Id.* 350; 67 *Id.* 47.

3. This court will not disturb a verdict on a question of fact when there is evidence to sustain it. 101 Ark. 180; 62 *Id.* 601; 99 *Id.* 495.

SMITH, J., (after stating the facts). It has been many times said that, ''Continuances in criminal as well as in civil cases are, as a general rule, within the sound discretion of the trial court; and a refusal to grant a continuance in a criminal case is never a ground for a new trial unless it is made to appear that such discretion has been abused to the prejudice of the defendant.'' *Lane* v. *State,* 67 Ark. 293. The rule, of course, is the same in civil cases.

And in the *Lane* case, *supra,* Judge BATTLE for the court defined the duty of the trial court upon the hearing of a motion for a continuance, and there said:

''The defendant insists that the court had no right to hear evidence controverting the truth of his motion. The contention is partly correct. The statement of facts which are expected to be proved by an absent witness can

not be contradicted by testimony or counter affidavits for the purpose of defeating a continuance: for the statute which regulates the postponement of trials in criminal prosecutions, so far as it is applicable, provides that no continuance shall be granted in civil cases on account of an absent witness, if the adverse party will admit that the absent witness, if present, would testify to the statements contained in the application for a continuance—thereby prohibiting the defeat of the application, so far as it relates to the testimony of the absent witness, by counter affidavits, or in any other manner, except by admitting that the witness, if present, would testify as the appellant believes he will. But, as to facts showing diligence and the like, the case is wholly different, and the same reasons do not apply. Counter affidavits or other competent evidence may be admitted and heard for the purpose of showing the want of diligence in procuring the testimony of an absent witness, or the want of good faith in making the application for a continuance, or the improbability that the proposed testimony can be obtained. *State* v. *Rainsbarger,* 74 Iowa, 196; *State* v. *Bailey,* 94 Mo. 311; *Cushenberry* v. *McMurray,* 27 Kan. 328; *Lascelles* v. *State,* 90 Ga. 375; *State* v. *Bevel* (Iowa), 56 N. W. Rep. 546; Anonymous, 3 Day, 308; *McGee* v. *State,* 31 Tex. Crim. Rep. 71.''

The rule appears therefore to be that the party resisting the continuance may not defeat the continuance, by offering proof showing that the testimony of the absent witness would not be true if given. But it is permissible to offer affidavits, or other competent evidence, to show a want of diligence in procuring the testimony of the absent witness, or the want of good faith in making the application for a continuance, or the improbability that the proposed testimony can be obtained; and if the court finds any of these three things to exist against the motion it has the discretion to refuse the continuance.

Here the court evidently found that diligence had been exercised in the attempt to secure the attendance of Fleetwood, but considered his affidavit on the questions

of good faith and of the probability of securing the evidence set out in the motion. The court struck out certain statements to which Fleetwood would not have been permitted to testify had he been present, and also undertook to conform the motion for a continuance to the affidavit, and we would not hold this to be an abuse of discretion had this only been done. But the court did more, it added to the motion for continuance the statement contained in the affidavit, ''But did tell me in January, 1911, that he had a right to sell the timber for defendants, Scotts.''

The pivotal question of fact in the case was whether appellant had an agency for the sale of timber, when he first showed it to Day prior to July, 1911, or whether in showing the timber appellee was merely attempting to aid his father-in-law, James, to make a sale during James's agency therefor. Appellee insisted that he had the agency for the sale of the timber, when it was shown Day, and he was permitted to bolster up his own statement to that effect by proving his own self-serving statement made to Fleetwood in January, 1911, that he was in fact then the agent for appellants.

It is a general rule, of broad application, that the declarations of a party, in his own favor, are not admissible in his behalf. The court's action offends against that rule. To get the benefit of certain relevant, material evidence of an absent witness, appellant was compelled to submit to the introduction of this incompetent evidence, and as it does not appear that no prejudice resulted therefrom, we are constrained to reverse the judgment of the court below, and remand the cause for a new trial. And it is so ordered.