# CHARLESTON.

## STATE *v.* JAMES WISMAN.

### Submitted May 22, 1923. Decided June 5, 1923.

1. CRIMINAL LAW—*Showing to Sustain Motion for Continuance for Absent Witness Stated.*

   A motion for continuance based on the absence of material witnesses is addressed to the court's discretion, and in order to be granted, it much appear to the satisfaction of the court that they are material witnesses, that due diligence has been used to obtain their attendance; and that their evidence is not merely cumulative of facts which can be proved by other witnesses in attendance. (p. 227).

2. SAME—*Motion for Change of Venue for ill Feeling and Prejudice Must be Supported by Showing That Such Grounds Exist at Time of Trial.*

   Likewise, a motion for change of venue is addressed to the sound discretion of the court; and if the motion for change of venue is on the ground of ill feeling or prejudice against defendant such ground must be shown to exist at the time of the trial, and not that it existed at some indefinite or remote prior date. (p. 227).

3. SAME—*Refusal of Instruction on Reasonable Doubt, Not Covered in Given Instruction, Held Erroneous.*

   An instruction which reads: "The court instructs the jury that if the jury, or any member of the jury entertains a reasonable doubt as to the defendant's guilt, they cannot find him guilty," should be given if requested, and it is error to refuse it, unless it is covered by some other instruction given. (p. 229).

4. ASSAULT AND BATTERY—*Instruction on Law of Self Defense Should be Given Under Warranting Evidence if Required.*

   Where there is evidence in the trial on an indictment or malicious wounding tending to show that while the father of the accused and the prosecuting witness were engaged in an affray, a deadly weapon being in the hands of the latter, with which he was about to kill or seriously wound the father, the accused entered the room where the combat was on, and perceiving his father's danger, shot and wounded the assailant, for which wounding the indictment was found; an instruction correctly stating the principle of self defense which

would justify the son in protecting his father from death or great bodily harm, should be given, if requested, (and if it is properly drawn). (p. 232).

5. SAME—*Accused in Prosecution for Assault Held Entitled to Instruction on Self-Defense, Without Qualification That Father, Whom He Sought to Defend, Without Fault in Bringing on Affray.*

Under such evidence tending to show the facts detailed above, the accused is entitled to such instruction, properly drawn, without the qualification that such defense could be invoked *only* if the jury found from the evidence that the father was without fault on his part in bringing on the affray. (p. 232).

6. CRIMINAL LAW—*Correct Instruction Presenting Theory of Defense, on Phase not Presented in Other Instructions, Should be Given.*

An instruction, if it properly propounds the law and is justified by the evidence, which presents to the jury a theory of the accused on a phase of the case not presented in other instructions, should be given. (p. 232).

Error to Circuit Court, Putnam County.

James Wisman was convicted of an unlawful assault, and he brings error.

*Reversed and remanded.*

*B. J. Pettigrew* and *Hogg & Hogg,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing* Assistant Attorney General, and *John T. Simms,* for the State.

LIVELY, JUDGE:

James Wisman was convicted of an unlawful assault upon Walter Adkins, and on the 29th of June, 1922, sentenced to confinement in the penitentiary for two years. This writ is to review that sentence.

The main facts are detailed in the case of *State* v. *George Wisman,* 93 W. Va. 183, 116 S. E. 698, to which reference is made. The affray out of which the indictment arose occurred at the store building of George Hodges, which was occupied by him in part as a dwelling. It appears that some degree of ill feeling existed between the Wismans and

Adkinses. The affray occurred in the afternoon, at which time George Wisman, James Wisman, the defendant a boy of nineteen years of age, Herb Robinson and Charley Robinson rode their horses to within a short distance of the store when George Wisman left the others. and rode to the store for the purpose of purchasing a lunch and some tobacco. Learning from some bystander that the Adkinses were in the store or dwelling, a part thereof, defendant and Charley Robinson hurriedly approached it. When defendant entered the store room a serious altercation had already taken place between Grant and Walter Adkins on the one hand and his father and Herb Robinson on the other, and the affray had about begun. As is usual in such cases, there is a wide divergence of the testimony as to the words and actions of the immediate actors. It is sufficient to say, in addition to the statement of facts found in the case of *State* v. *George Wisman, supra,* that the Adkinses and their witnesses say George Wisman and Herb Robinson began the assault with deadly weapons; on the other hand, the witnesses for defense assert that the Adkinses began the assault with deadly weapons. George Wisman and Walter Adkins came to grips, and while struggling with each other, or down upon the floor, the state's witnesses say James Wisman, defendant, appeared in the living room where the fight occurred, from the store room adjoining, and shot Walter Adkins in the back. James Wisman says he reached the store room about the time that one of the Adkinses fired a shotgun at his father, who, about that time, grappled with Walter Adkins, who had a pistol in his hands, and disarmed him of that weapon, the same falling on the floor near the counter; that in the fight on the floor Walter had obtained the ascendency and was about to stab his father with a knife when he, defendant, picked up the pistol and shot Walter Adkins in good faith believing and having cause to believe that his father was in danger of death or great bodily harm. As above observed, the witness for the state detailed the circumstances of the fight quite differently. The jury has weighed and determined the evidence and harmonized these discrepancies in favor of the prosecution, declaring, however,

by their verdict that the shooting by defendant was unlawful and not malicious.

Defendant says the court erred: (1) in refusing to grant him a continuance; (2) in refusing to award a change of venue; (3) in the admission of evidence over his objection; and (4) in refusing to give to the jury certain instructions numbered 3, 4, 5 and 8, tendered by him.

The motion for continuance is based upon the absence of Ed. Hodges and May Racer, and it is said that their evidence was material and that defendant could not safely go to trial in their absence. The evidence of Ed Hodges would have been to the effect that he saw Walter Adkins on the morning of the day of the fight, on the streets of St. Albans, a nearby town, who told him that he was going to a hardware store in that town for the purpose of buying cartridges which he named "Wisman pills." The alleged evidence of May Racer was to the effect that a short time before the fight occurred she observed Walter Adkins hurriedly going toward the store of Hodges with cartridges in his hands, which he again denominated as "Wisman pills," or something to that effect. The process for these witnesses was issued on the 21st of June and delivered or sent to George Wisman for service. He was unable to find Ed Hodges, who, it appears, some days before the issuance of the process, had left the neighborhood and gone somewhere on Coal River, and George Wisman was not able to find him. The trial was set for the 25th of that month. The process for May Racer was not served; at least there was no return of service. George Wisman stated that he had sent the process to her by some relative. Passing over the question in respect to the materiality of the absence of the witnesses, we do not think due diligence had been exercised to obtain their presence. A motion for continuance is always addressed to the sound discretion of the court, and we do not think the court erred in overruling the motion, it appearing that there was want of diligence.

The petition for change of venue avers that defendant could not obtain a fair and impartial trial in Putnam county, because of the strong public opinion and public senti-

ment against him, to the effect that he was guilty as charged and that this opinion and sentiment had been formed by reason of false statements made and circulated throughout the county by the Adkins family; and that two newspapers of general circulation in that county published in the city of Charleston had published a distorted account of the affray on which the indictment was based which created a great prejudice against him in the minds of the public generally; and that there was a prejudice against his father, (who was indicted jointly with him), among the coal miners of that county, who were considerable in number, because he, the father, had been active in obtaining and procuring information while they were on a strike, detrimental to their interests. The affidavits in support of the motion are all worded practically alike and were made by persons living in the vicinity of Hurricane and Scott Depot in Putnam county, except one affiant who lived in Teays, and all are to the effect that the affiants are generally acquainted with the people of Putnam county and particularly in the vicinity where they resided, and that they had heard the case against defendant frequently discussed to the effect that the defendant was guilty; and in the opinion of affiants defendant could not obtain a fair and impartial trial in the county. On the other hand, the state filed in resistance of the motion several affidavits from officers and representative citizens of the county, that while they knew defendant had been indicted they had never heard the case discussed, and found no sentiment or prejudice in the minds of the people generally with whom they came in contact against the defendant, and they believed that defendant could obtain a fair and impartial trial. The voire dire of the jurors selected does not appear in the record, nor does it appear from what part of the county the jury were selected or whether they had ever heard of the pendency of the indictment. The newspaper articles which are said to have created sentiment against defendant throughout the county to such an extent that he could not obtain a fair and imparial trial, do not appear, although they could have been easily obtained. The affray occurred May 13, 1921, and the trial was had in the last week of June, 1922,

more than a year afterwards, and it does not appear whether the sentiment and prejudice, if any was generated by the newspaper articles at the time of the affray, or from any other cause, still continued in existence. If the cause for change of venue be ill feeling or prejudice against the prisoner it must be shown to exist at the time the application is made, not that it existed at some distant prior date. *State* v. *Powers,* 91 W. Va. 737. We do not think the court abused its discretion in refusing a change of venue. The showing of bias and prejudice against the prisoner is not established as existing throughout the county. It may be that in the immediate neighborhood of Scott Depot and Hurricane some prejudice had existed, but it falls far short of establishing that fact generally throughout the county, or in the vicinity of the court house where the trial was had. *State* v. *Greer,* 22 W. Va. 800; *State* v. *Sheppard,* 49 W. Va. 582.

The objection to the testimony relates to what witnesses for the state testified as to the words and actions of the participants in the room adjoining the store room, it not being clear that James Wisman had arrived on the scene at that time. It was all a part of the actual fight, and it would have been impossible to tell how the affray occurred except by these witnesses, and is so closely connected with the time that defendant took part therein that it could not have been intelligently excluded. This point of error is not argued or insisted upon in the brief.

We next come to the instructions. Was defendant prejudiced by the instructions which were refused? Defendant's peremptory instruction No. 2, to find him not guilty, was properly refused. His instruction No. 3 reads: "The court instructs the jury that if the jury, or any member of the jury entertains a reasonable doubt as to the defendant's guilt, then they cannot find him guilty." This instruction propounds the law, and should have been given. This instruction relates not only to reasonable doubt, but also to unanimity in the verdict. The attorney general says this instruction was properly refused, because it was incorporated in defendant's instruction No. 10, which reads:

"The court ·instructs the jury that if they entertain any reasonable doubt as to the defendant's guilt, it is their duty to give the benefit thereof to the defendant, and find him not guilty." It will be observed that this latter instruction is entirely as to reasonable doubt in the minds of the jury as a whole, and that if they entertain a reasonable doubt as to his guilt they must find him not guilty. It does not attempt to instruct the jury as to the legal requirement of unanimity in finding their verdict. Instruction No. 3 is not couched in such terms as would invite a disagreement. ' It simply informs the jury that if any member thereof entertains a reasonable doubt as to defendant's guilt, they cannot find him guilty. This instruction must not be confused with the one disapproved in *State* v. *McCausland,* 82 W. Va. 525. That instruction told the jury that if any member had reasonable doubt as to defendant's guilt they should find him not guilty. A reasonable doubt as to the guilt of an accused in the mind of one juror does not compel the jury to find defendant not guilty. The other jurors may be satisfied of his guilt beyond a reasonable doubt. We said in *State* v. *McKinney,* 88 W. Va. 400, that an instruction on the subject of the legal requirement of unanimity of the jury in finding its verdict which would advise the jury that "if any juror, after due consideration of the evidence and consultation with his fellows, has reasonable doubt of the guilt of the accused in a criminal case, it is his duty not to surrender his own convictions, simply because the other jurors are of a different· opinion, is correct, and should be given upon request, unless its subject is covered by some other instruction given in the case." ·The majority of the court said that another instruction in the McKinney case covered the question of unanimity in the verdict, and therefore the instruction, the substance of, which is given above, was properly refused. But if there had been no other instruction on that point it should have been given. The instruction as propounded in the instant case stated a correct proposition of law. The minds of the jurors must meet in order to form a verdict, and in a criminal case it is proper that jurors should be so advised. An inexperienced juror

not being advised of the tenderness with which the law regards human life and liberty and of the strict requirements necessary to deprive the accused of life or liberty may be under the erroneous impression that although he should have reasonable doubts of the guilt of the accused he should defer to the judgment of the majority of his more experienced fellow jurymen. Refusal of instructions of this character advising the individual juror of his right in that regard has been held to be error in many jurisdictions. We are cited by defendant's counsel to *State* v. *Mitchell,* 30 So. 348, where the supreme court of Alabama in the 17th point of the syllabus said: "On the trial of a criminal case, a charge asserts a correct proposition, and should be given at the request of the defendant, which instructs the jury that: 'Before they can convict the defendant, the evidence must be so strong as to convince each juror of his guilt beyond reasonable doubt, and if, after considering all the evidence, a single juror has a reasonable doubt of the defendant's guilt, arising out of any part of the evidence, then they cannot convict him'.; and the refusal to give such charge at the request of the defendant will work a reversal of the judgment of conviction." The same holding is found in *Grimes* v. *State,* 17 So. 148, and *Carter* v. *State,* 15 So. 893, where the court said it is error to refuse to charge that each juror must be satisfied beyond a reasonable doubt that accused is guilty before they can convict." In *McCue's Case,* 103 Va. 870, the principle of this instruction was given and approved in the following language: "The court instructs the jury that upon the trial of a criminal case by a jury the law contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had. Each individual juror must be satisfied beyond a reasonable doubt of the defendant's guilt before he can, under his oath, consent to a verdict of guilty. Each juror should feel the responsibility resting upon him as a member of the jury, and should realize that his own mind must be convinced beyond a reasonable doubt of defendant's guilt before he can consent to a verdict of guilty. Therefore, if any individual member of the jury, after having duly considered all the evidence in this case,

and after consultation with his fellow-jurors, should entertain such reasonable doubt of defendant's guilt as is set forth in certain other instructions in this case, it is his duty not to surrender his own convictions simply because the balance of the jury entertain different convictions.'' The same principle underlies the instructions in *Castle* v. *State,* 75 Ind. 14; *Parker* v. *State,* 136 Ind. 284; *People* v. *Dole,* (Cal.) 68 Am. St. 50; *People* v. *Singh,* 128 Pac. 420; *Ammons* v. *State,* (Miss.) 42 So. 165. See also *Meehan* v. *State* (Wis.), 97 N. W. 174; *State* v. *Ryno,* (Kans). 74 Pac. 1114; *State* v. *Rodgers,* 56 Kan. 362; 43 Pac. 256; *Little* v. *State,* 157 Ill. 157. There are decisions to the contrary, especially where the instruction is so worded as to invite obduracy and disagreement. Was the prisoner prejudiced by the refusal of this instruction? This question is hard to answer. Enunciating a correct principle of law applicable to the case, it is presumed that he has been prejudiced by its refusal.

Defendant's instructions Nos. 4 and 5 were refused. They are:

### No. 4.

''The court instructs the jury that self-defense under the laws of this State extend not only to one's self, but also to a member of one's family, and, therefore, if the jury find from the evidence in this case that the defendant, James Wisman, came into the store of George Hodges, and there saw Walter Adkins assaulting his father, George Wisman, in his presence in such manner and under such circumstances as to give to the said James Wisman reasonable cause to believe and he did believe that his said father, George Wisman, was in danger of death or great bodily harm at the hands of the said Walter Adkins, and that said danger was imminent, then the said James Wisman had the right to act upon such appearances and shoot the said Walter Adkins in order to preserve the life or save his said father from great bodily harm and if the jury believe from the evidence in this case that the defendant, James Wisman so acted, then they shall find him not guilty.''

## No. 5.

"The court instructs the jury that if they believe from the evidence in this case that on the afternoon of May 13, 1921, the defendant, James Wisman, came into George Hodges' store, and there saw his father, George Wisman, down with Walter Adkins over him, apparently assaulting him, and that the said James Wisman believed and had reasonable cause to believe that his said father, George Wisman, was in danger of death or great bodily injury at the hands of the said Walter Adkins, and that such danger was imminent, then the jury is instructed that the defendant, James Wisman, had the right to act upon such appearances and shoot the said Walter Adkins in order to preserve his said father from death or great bodily harm at the hands of the said Walter Adkins; and if the jury believes that the said defendant so acted, they shall find him not guilty."

These instructions were properly refused, because they do not correctly state the law of self-defense. If the jury believed that the circumstances existed as stated in these instructions and that the accused had reasonable cause to believe that his father was in great danger of death or great bodily injury at the hands of his assailant and such danger was imminent, yet before he could act upon the appearances he must have had reasonable cause to believe and actually believed that the shooting done by him was necessary to protect his father. Under such circumstances he must not only believe that there is imminent danger that the design of the assailant will be accomplished, but in addition thereto he must have cause to believe, and actually believe, that the shooting on his part is necessary. Although he may have cause to believe and believe that the danger is imminent, yet if there are other means by which he can avoid the imminent danger they must be adopted rather than to take the life of the assailant or do him great bodily harm. If he can avoid the imminent danger without slaying the assailant, it is his duty to do so, however threatening and imminent the danger may be. Therefore, he must not only have reasonable grounds to believe, but must believe, that the killing

or wounding of the assailant is necessary to avoid the danger. *State* v. *Wisman, supra; Cain's Case,* 20 W. Va. 679. By the refusal of No. 4, prisoner was deprived of that part of the instruction to the effect that under the law of self-defense one may do for a near relative what he may do for himself. *State* v. *Wisman, supra; Cain's Case,* 20 W. Va. 679. However, defendant's instruction No. 6 was modified and given.. That instruction reads: "The court instructs the jury that if they believe from the evidence in this case that George Wisman, being without fault himself, was attacked by the witness, Walter Adkins, in the presence of the defendant, James Wisman, under such circumstances and in such a manner as to cause the said defendant, James Wisman, to believe, and he did believe, that his said father was in danger of death or great bodily harm at the hands of the said Walter Adkins, and that such danger was imminent then the jury is instructed that the defendant, James Wisman had the right to act upon such appearance and shoot the said Walter Adkins, in order to preserve his father, George Wisman, from death or great bodily harm at the hands of the said Walter Adkins, even if it should later turn out that such appearances were, in fact, false and that such danger did not in fact exist; and the jury is instructed that if they believe from the evidence in this case that the defendant, James Wisman, shot the said Walter Adkins under the belief, in good faith, that at the time, his father, George Wisman, was in danger of death or great bodily harm at the hands of the said Walter Adkins, then they shall find the defendant not guilty. But of all this the jury are the sole judges from all of the facts and circumstances in the case."

The modification made by the court is said to have been made in the second line of the instruction by interpolating the phrase: "being without fault himself." This instruction, although given without objection as to modification, is subject to the same criticism directed to Nos. 4 and 5, in that it does not say that defendant should have had cause to believe and did believe the shooting was necessary in order to save the life of his father or to protect him from great bodily harm. It is asserted by counsel for defendant that the court,

having given instruction No. 6, telling the jury that defendant had the right to shoot Walter Adkins in defense of his father, if the father "being without fault himself," was attacked by the witness, Walter Adkins, should not have refused instruction No. 5, because that instruction does not predicate the right of self-defense upon the fact that the father was at fault in bringing about the affray. The argument is that defendant arrived on the scene after the affray began, and perceiving his father's life about to be taken by his assailant, the law did not require him to stop and inquire whether his father was at fault in bringing about the affray; that he could then act on the appearance of imminent danger and shoot the assailant. As before stated, the evidence is conflicting as to the exact time of the affray when defendant came into the store and to the rescue of his father. The state's witnesses say defendant came into the room while his father and Walter Adkins were grappling with each other and then did the shooting; while defendant himself says he came into the store room at the time one of the Adkinses discharged the shotgun at his father, which was before the time stated by the state's witnesses. However that may be, it is apparent that defendant was not present when the difficulty began and could not know who was at fault at its inception. His theory couched in a proper instruction should have gone to the jury. If the jury believed that he came in after the difficulty began, and the affray was on, then his right of self-defense in behalf of his father should not have been predicated on whether his father was at fault. He had no time then to stop to inquire, and it would be unreasonable to require him to act at his peril, if he had reason to believe and did believe his father was about to be killed, and that he had reason to believe and did believe it was necessary for him to shoot the assailant in order to preserve his father's life. So, the refusal to give instruction No. 4 precluded defendant from having the jury instructed on that theory; just as the refusal of No. 5 precluded him from having the jury to know that the right of self-defense extended to the protection of his father. But, as before stated, we think these two instructions, 4 and 5,

were properly refused for the reasons above set out. It is apparent, then, that through inaptly drawn instructions, which were properly refused, defendant has been deprived of a proper instruction upon the law of self-defense applicable to the case. But let it be repeated, we do not hold that it was error to refuse instructions 4 and 5 in the language in which they were drawn. However, we do conclude that the refusal to give instruction No. 3, instructing the jury as to the unanimity of the verdict, and the right and duty of each individual juryman in arriving at a verdict was error which presumably would be prejudicial to defendant; and in view of this, and the inadvertent deprivation of the proper instructions upon the law of self-defense as applicable to the case we have concluded, reluctantly, to set aside the verdict and award defendant a new trial.

*Reversed and remanded.*