## UNITED STATES *v.* LANCASTER *et al.*

*(Circuit Court, W. D. Georgia, S. D.    December 11, 1890.)*

1. CONSPIRACY—INTIMIDATION TO PREVENT PROSECUTION FOR CONTEMPT—FEDERAL JURISDICTION.

   A citizen of another state, who has obtained a decree in a federal court of this state, settling his title to land, with a perpetual injunction restraining defendants from interfering therewith, has the right to proceed by contempt in the federal court against defendants for a violation of the injunction, which right is secured to him by Const. U. S. art. 3, § 2, par. 1, providing that the judicial power shall extend to all controversies between citizens of different states; and a conspiracy by defendants to intimidate him from prosecuting the contempt proceedings is a violation of Rev. St. U. S. § 5508, which makes it a crime for two or more persons to conspire together for the purpose of intimidating any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States; and for such conspiracy defendants may be indicted and tried in the federal court.

2. SAME.

   Though the power to punish for contempt resided in courts of record long before the adoption of the federal constitution, the right of a citizen of a state to apply to a federal court to punish by contempt a violation of its decree against citizens of a sister state is nevertheless secured to him by the constitution and laws of the United States, which provide that the jurisdiction of the federal courts shall extend to all controversies between citizens of different states.

3. SAME—INDICTMENT.

   The decree settling the title to the land is a judicial and conclusive determination by the federal court that it had jurisdiction of the subject-matter and of the parties to the suit; and hence the indictment, which alleges that defendants conspired to prevent the complaining witness from enforcing the decree of the federal court, is not defective by reason of its failure to specially allege that the complaining witness is a citizen of a different state from defendants.

4...SAME—MISJOINDER.
    Since Rev. St. U. S. § 5508, defines and punishes a conspiracy against the civil
    rights of a citizen, and section 5509 provides for an additional punishment for a fel-
    ony committed in pursuance thereof, an indictment which unites a count for con-
    spiracy with another count for a murder committed in pursuance thereof is not bad
    for misjoinder.
5. SAME—SUFFICIENCY OF INDICTMENT.
    Neither is the indictment defective by reason of its failure to set out the decree
    which the complaining witness sought to enforce, or to specifically describe the
    federal statute which defendants violated by the formation of the conspiracy.

At Law. Indictment for conspiracy and murder.

*Marion Erwin,* U. S. Atty., (*Fleming du Bignon,* special counsel,) for
the United States.

*Bacon & Rutherford, Dessau & Bartlett,* and *C. C. Smith,* for defendants.

SPEER, J. The prisoners are indicted for the crime of conspiracy to
injure, oppress, threaten, and intimidate a citizen of the United States
and of the state of New York, to-wit, Norman W. Dodge, because he
had exercised a right and privilege secured to him by the constitution
and laws of the United States. In another count of the indictment, the
conspiracy is charged to have been made and entered upon, to injure, op-
press, threaten, and intimidate Norman W. Dodge in the free exercise
and enjoyment of rights and privileges secured to him by the constitu-
tion and laws of the United States. It will be observed, therefore, that
the conspiracy is charged to have purposed the twofold design: *First,*
unlawfully and feloniously to injure Norman W. Dodge because of his
previous exercise of rights secured to him by the federal constitution and
laws; *second,* to accomplish the same unlawful injury, oppression, etc.,
because he continued in the exercise and the enjoyment of the same
rights secured to him by the constitution and laws of the United States.
To both counts for conspiracy there is added the charge that, in pursu-
ance of the conspiracy, and according to its felonious combination and
agreement, Rich Lowry, *alias* Rich Herring, on the 7th day of October,
1890, within the jurisdiction of the court, did kill and murder John C.
Forsyth, the agent of Norman W. Dodge, by shooting him in the head
with a shotgun loaded with gunpower and buckshot. This feature of
the indictment is framed with all the essential requisites of an independ-
ent indictment for the murder of Forsyth by all of the conspirators.
The cause having come on for trial, and the United States attorney pro-
ceeding to arraign all of the prisoners except Rich Herring, *alias* Low-
ry, who had not been arrested, the defendants, except Lem Burch, who
had pleaded guilty, and Clements, who was represented by different coun-
sel, demurred to the indictment upon the grounds: (1) That the mat-
ters therein charged do not constitute an offense or offenses against the
laws of the United States, and do not come within the purview, true in-
tent, and meaning of the act of congress, approved May 31, 1870, entitled
"An act to enforce the rights of citizens of the United States," and do
not constitute offenses cognizable by the circuit court, and are not within
its power and jurisdiction. (2) The defendants are charged with mur-
der and with conspiracy, which is a misjoinder of offenses, with differ-

ent punishments. (3) That because a decree mentioned in the indictment as a muniment of title of Norman W. Dodge is not set out, it is a conclusion of law and not of fact that said decree became and was a muniment of title. To these grounds the additional ground was added to the demurrer by amendment, namely, that the indictment does not set forth what is the statute or law of the United States which secured to Norman W. Dodge the right or privilege which the indictment charged the conspiracy was formed to prevent. The indictment is framed under sections 5508 and 5509 of the Revised Statutes, which read as follows:

"Sec. 5508. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, —they shall be fined not more than five thousand dollars and imprisoned not more than ten years; and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the constitution or laws of the United States. Sec. 5509. If, in the act of violating any provision in either of the two preceding sections, any other felony or misdemeanor be committed, the offender shall be punished for the same with such punishment as is attached to such felony or misdemeanor by the laws of the state in which the offense is committed."

The material portion of the indictment which set out and find the nature of the right of Norman W. Dodge, and which describe the alleged conspiracy to injure and oppress him, etc., because of its exercise, and because he had exercised the same, are as follows:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that heretofore, to-wit, on the 2d day of September, in the year of our Lord one thousand eight hundred and ninety, the said Wright Lancaster, John K. Lancaster, Henry Lancaster, James Moore, Louis Knight, Lem Burch, Charles Clemens, Rich Lowry, *alias* Rich Herring, Luther A. Hall, and Andrew J. Renew, now deceased, did, within said division and district, and within the jurisdiction of said court, then and there, amongst themselves, and with divers other evil-disposed persons, to the grand jurors aforesaid unknown, unlawfully and feloniously conspire, confederate, and agree together to injure, oppress, threaten, and intimidate the said Norman W. Dodge, he, the said Norman W. Dodge, being then and there a citizen of the United States of America, in the free exercise and enjoyment of rights and privileges secured to him by the constitution and laws of the United States, the said rights and privileges being herein more particularly set forth as follows: That heretofore, to-wit, on the 5th day of April, A. D. 1886, a final decree was rendered in the circuit court of the United States for said western division of the southern district of Georgia, and perpetual injunction granted in said decree, whereby the title of George E. Dodge was established and declared good and valid to large tracts of lands lying in the counties of Dodge, Telfair, Montgomery, and Laurens, in said southern district of Georgia, said decree having been rendered in the equity cause of George E. Dodge against Luther A. Hall, Oliver H. Briggs, Andrew Cadwell, Red Rawlins, Harrison Grimes, John Dowdy and others. That afterwards (but before the unlawful confederation and conspiracy hereinbefore set forth) the said George E. Dodge in due form of law transferred and conveyed all his title in said lands to said Norman W. Dodge, and the said decree thereby became and was a muniment

of title of the said Norman W. Dodge in and to the said lands, and it thereby became a right and privilege of the said Norman W. Dodge, under the constitution and laws of the United States, by himself and by his agents, duly authorized for that purpose, to institute and prosecute all proper and lawful proceedings in the said circuit court for said division and district, to carry said decree into execution, and to bring before said circuit court, by due process of law, any and all persons violating the terms of the said injunction granted in said decree, for punishment as for a contempt of court. That afterwards, to-wit, on the 12th day of July, A. D. 1890, the said Norman W. Dodge, in the free exercise and enjoyment of the said right and privilege secured to him by the constitution and laws of the United States, by and through his agent, John C. Forsyth, did institute a proceeding in said circuit court for said division and district, for the purpose of obtaining a rule against said Luther A. Hall requiring him to show cause why he should not be punished as for a contempt of court for an alleged violation of the said injunction granted in said decree, said proceeding being a petition for said rule. That afterwards, on the 27th day of August, A. D. 1890, the said Norman W. Dodge, in the free exercise and enjoyment of the said right and privilege secured to him by the constitution and laws of the United States, by and through his agent, John C. Forsyth, did present to the Honorable EMORY SPEER, a judge of the circuit court of the United States for the said western division of the southern district of Georgia, a petition for the purpose of obtaining a rule in said circuit court against said Luther A. Hall, requiring said Hall to show cause why he should not be punished by said circuit court for an alleged violation of the injunction granted in said decree, as aforesaid. That afterwards, to-wit, on the 2d day of September, A. D. 1890, at the time of said unlawful conspiracy and combination in this count mentioned, the said Norman W. Dodge was then and there in the free exercise and enjoyment of the right and privilege secured to him under the constitution and laws of the United States of prosecuting said petitions and proceedings to obtain rules against the said Luther A. Hall, as hereinbefore mentioned, and was then and there engaged in the exercise of said right by prosecuting the same. That on the said 2d day of September, A. D. 1890, at the time of said unlawful conspiracy and combination in this count mentioned, the said Norman W. Dodge was in the free exercise and enjoyment of the said right and privilege secured to him by the constitution and laws of the United States of instituting and prosecuting all proper and lawful proceedings in the said circuit court for said division and district to carry into execution said decree, and to bring before said circuit court, by due process of law, any and all persons violating the terms of the said injunction granted in said decree, for punishment as for a contempt of said circuit court, and was then and there engaged in the free exercise of said right and privilege by prosecuting said proceedings against any and all persons so violating the said injunction as aforesaid. That on the said 2d day of September, A. D. 1890, the said Norman W. Dodge was then and there a citizen of the state of New York, and of the United States of America, and the said Norman W. Dodge was then and there engaged in the exercise of the right and privilege secured to him by the constitution and laws of the United States, of instituting in said circuit court for said division and district suits against any and all squatters and trespassers upon the said lands of said Norman W. Dodge in said division and district, the said squatters and trespassers being citizens of the state of Georgia, residing in said division and district, and the matters in dispute in such suits being within the jurisdiction of the said circuit court for said division and district. And the said Wright Lancaster, John K. Lancaster, Henry Lancaster, James Moore, Louis Knight, Lem Burch, Charles Clemens, Rich Lowry, *alias* Rich Herring, Luther A. Hall, and Andrew J. Renew,

now deceased, and said divers other evil-disposed persons, to the grand jurors aforesaid unknown, wickedly devising and intending to prevent and hinder the said Norman W. Dodge from the further exercise of said rights and privileges secured to him under and by the constitution and laws of the United States, did, on the 2d day of September, A. D. 1890, within said division and district, then and there, amongst themselves, unlawfully and feloniously conspire and combine, confederate, and agree together, as aforesaid, to injure, oppress, threaten, and intimidate the said Norman W. Dodge in the free exercise and enjoyment of the rights and privileges in this count specified, secured to said Norman W. Dodge by the constitution and laws of the United States; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The important question presented by the demurrer is this: Does the indictment set out an offense which is a substantial violation of sections 5508 and 5509 of the Revised Statutes? For the purposes of this inquiry, of course, the allegations in the indictment are taken as true.

Stripped of the technical wording of the indictment, it appears that George E. Dodge, in a suit in equity pending in the United States circuit court for this district, had obtained a perpetual decree of injunction against Luther A. Hall and many others enjoining them from any interference with a large body of lands in this district, the title to which, was by the same decree adjudged to reside in George E. Dodge. Subsequently Norman W. Dodge, by purchase, became the owner of these lands, and, as a consequence, vitally interested in the decree of this court, by which the title of his grantor was settled, and his own rights protected. It became necessary, however, for Norman W. Dodge to present to this court proceedings which would enable him to enforce the rights he had obtained under the decree, and to enforce obedience to the decree. He instituted several rules for that purpose against the persons mentioned in the bill of indictment, some of which rules had been disposed of by the action of the court prior to the 7th day of October of this year, and others were still pending. Norman W. Dodge, it appears, was a citizen of the United States and of the state of New York, and it is not disputed that he had the right, in a matter in which an interest in him was shown, to apply by proceeding to this court to enforce respect and obedience to a final decree of this court, upon which his interest depended. The theory of the indictment is that the right so to apply to the circuit court of the United States for process to enforce its decree, and to bring all persons violating the terms of its injunction, before the court for punishment, was on the part of the said Norman W. Dodge, the exercise of a right and privilege secured to him by the constitution and laws of the United States. It is further comprehended in the scope of the indictment, that, having applied to the court and obtained a rule or rules against certain parties calling upon them to show cause why they should not be adjudged in contempt for their disrespect and disregard of the final decree of the court, that Norman W. Dodge had then the right to press his proceeding to a judicial conclusion, and to obtain the benefit and protection thereby which is usual in cases in equity. It is insisted on the part of the government

that this right resides in the constitution itself, and in several acts of congress creating the courts, defining the jurisdiction and extending it to controversies between the citizens of the several states. It is insisted further that the conspiracy having been formed, and the homicide of Forsyth in pursuance thereof having been committed, to punish and to prevent the exercise of this right, it is clearly within the provisions of the penal sections of the statute above quoted.

For the demurrer, it is argued by the defendants' counsel that Norman W. Dodge had no right secured to him by the constitution and laws of the United States which would authorize him to litigate his controversies depending upon the decree of this court, in the court of the United States. They argue that the power of a court, to punish for contempt exists independently of the constitution or laws of the United States. They call attention to many declarations by text-writers and by the courts to the effect that the power to proceed by the process of contempt is incident to every tribunal, and is derived from its very constitution without any express statutory aid. 2 Bish. Crim. Law, § 243; *Clark* v. *People*, 12 Amer. Dec. 177; *Ex parte Adams*, 59 Amer. Dec. 234; *Williamson's Case*, 67 Amer. Dec. 374; *State* v. *Doty*, 90 Amer. Dec. 671; *Ex parte Robinson*, 19 Wall. 505. From these authorities they evoke the argument that the procedure for contempt did not originate in the constitution or laws of the United States, and they argue, therefore, that the right to proceed in the courts of the United States against a party as for a contempt is not a right secured by the constitution or laws of the general government. From *Ex parte Robinson, supra*, they deduce the proposition that the seventeenth section of the judiciary act of 1789 operates as a limitation upon the manner in which the courts of the United States shall exercise the power of prescribing fine and imprisonment for contempts, and is not, therefore, the creation of a power in the court, or rights in applicants for the exercise of that power. The power to proceed for contempt existing inherently in courts of record, they argue that no person is given by the constitution or laws of the United States the right to institute proceedings to have a party punished for disobedience to a decree in a court of the United States; and they argue that the court has no jurisdiction to try a charge of conspiracy to injure or oppress a citizen of the United States because of the exercise or enjoyment of a right secured to him by the constitution and laws of the United States, unless that right owes its creation, its definite and precise existence, to the express language of the federal law. These views have been presented with the earnestness usual with counsel in cases of large import, and the court has endeavored to give the argument the close consideration which such questions deserve.

It is undeniably true that the power of a court to institute, upon proper grounds, procedure for contempt existed long anterior to the existence of the United States, its constitution, or its laws. This is true, however, of nearly every useful and well-known method of procedure known to the law. The bill and the cross-bill in chancery, the declaration in ejectment, the libel in admiralty, indeed the great body of civil

and criminal procedure, was in common use as a part of the machinery of courts, when the constitution was adopted. It would not, however, be insisted, we think, that because a non-resident of the state in a controversy between himself and a citizen resident in this district found it necessary to apply to this court for the issuance of any of its usual writs, that it could be successfully urged that the writ should be refused because it was of an ancient character, and antedated, in its use, our federal government. The right of the non-resident to sue for it finds its existence in the federal law, and it is utterly illogical to say, because the proceeding is inherent in the court, that the applicant, belonging to a class who is entitled to do so, is not exercising a right secured to him by the constitution and the laws, when he makes application for it, or when he presses it to trial after it is issued. It follows, therefore, that, however ancient the procedure because of contempt may be, however inherent and essential to courts of record, if a citizen of the United States, by virtue of the United States law, has the right to apply to the court to evoke its exercise, and to press it to trial after its institution, this right is secured by and is dependent on the United States law. The *Case of Cruikshank*, 92 U. S. 542, relied upon with apparent confidence by the prisoners' counsel to controvert this view, is not, as it appears to the court, at all in conflict with it. In that case the main count of the indictment charged that the conspiracy was formed to injure, oppress, threaten, and intimidate two citizens of the United States of African descent, and persons of color, with the unlawful and felonious intent thereby to hinder and prevent them in their free exercise and enjoyment of their lawful right and privilege to peaceably assemble together with each other and with other citizens of the said United States for a peaceable and lawful purpose. That this was not a right secured by or dependent on the constitution or laws of the United States is manifest, because the right had always existed in those times when the citizen or subject enjoyed any liberty whatever. But suppose the charge had been that the conspiracy was formed to hinder and prevent the people from assembling to petition congress for a redress of grievances, it would have been, in that event, a violation of a right secured by article 1, par. 1, of the amendments of the constitution, which declares that congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for redress of grievances. The supreme court, in *U. S.* v. *Cruikshank*, expressly holds that if it had been alleged in the indictment that the object of the conspirators was to prevent a meeting for such a purpose as a petition to congress for a redress of grievances, the case would have been within the statute, and within the scope of the sovereignty of the United States. What, then, becomes of the argument that, if a right is not expressly originated and created by the federal law, it is a right without the pale of federal protection? The clause of the constitution just quoted does not create the right to petition government; it merely declares that it shall not be abridged, and yet upon that precise constitutional dec-

laration the supreme court declare that the jurisdiction of the national courts is based, for the protection of the citizens in its exercise. This is a right, therefore, which was a common heritage of the people prior to the formation of the constitution of the United States, and yet it is a right which we have paramount authority for holding is secured by, and dependent on, the constitution and laws of the United States. Analogizing this principle to the question raised by the demurrer, if the constitution had declared that the right of the citizen to appeal to the federal courts should not be infringed, even though that right was a common heritage antedating the constitution, it would have been a right secured by or dependent on the constitution and laws of the United States. Much more, then, is it true that the right is so secured and so depends when it appears by the express letter of the constitution that the judicial power of the government extends to all cases in law and equity arising under the constitution and laws, and to controversies between citizens of different states; and more conclusive still when it appears that by a series of statutes and by a multitude of decisions suitors of the class to which Norman W. Dodge belongs have been admitted with their controversies into the federal courts, and, indeed, that the great bulk of the business in those courts arises from controversies between suitors of his class.

Now let us see if Norman W. Dodge, a citizen of the state of New York, had the right to make application to the circuit court here for the relief he sought. We read from paragraph 1, § 2, art. 3, of the constitution:

"The judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, * * * to controversies between citizens of different states."

It would seem that the right of Norman W. Dodge to proceed to enforce the decree of this court of the United States is doubly strong. He may proceed because he is a citizen of another state and his controversy is with citizens of this state. If it be true, however, that this does not sufficiently appear from the indictment, as is insisted in the argument, the case he makes by his petition arises under the constitution and laws of the United States, and for the following reasons: The decree he seeks to enforce is a decree of a United States court. By that decree the court judicially and conclusively settled that it had jurisdiction of the subject-matter of the litigation and the parties concerned. Norman W. Dodge, becoming interested, had the right under the general practice of a court of equity to call the attention of the court to the fact that its injunctions had been violated. 2 High, Inj. § 1449. His proceeding, then, was merely ancillary to a case arising under the laws of the United States, and which the court had held, by entertaining jurisdiction thereof, to be a case of that character. The courts of the United States are of limited jurisdiction, and they can try no case which, either in the action of the court, the exercise of its jurisdiction, or in the controversy itself, is not a case provided for by the laws of the United States. It may be taken, I think, as a conclusive proposition, that wherever a party has a right

to litigate in the United States courts, he is exercising a right secured to him by the constitution and laws of the United States. There are no inherent rights to sue in the United States court, as in the courts of general jurisdiction in the states and in the mother country. The courts themselves were created as tribunals of a special and limited character as to jurisdiction, for the necessities of the federal system; and only those persons can sue in the United States court or proceed there who are given the right to do so by the United States law.

It may be true—it doubtless is true—that parties often become litigants before the United States court because their interests are necessarily and inevitably commingled with the interests of persons who have the express right to litigate there. The court will then proceed to determine the rights of all parties before it; but, even in that case, it does so because it is either expressly authorized to do so, or because the power it exercises is a necessary and inevitable implication from its express constitutional or statutory powers. Wherever, therefore, there exists a right to become a suitor or litigant in the United States courts, it is a right the exercise of which is secured to the party by the constitution or laws of the United States, for, if not secured in this manner, and by these laws, it can have no other security; and it follows, I think, that wherever there is a conspiracy to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of his right or privilege to become a suitor in the courts of the United States, or, having so become, to injure or oppress him to prevent him from litigating his controversy there, the conspiracy is a violation of section 5508 of the Revised Statutes, a matter of which the courts of the United States properly and clearly have jurisdiction to inquire, and, on conviction, to punish the offenders. Indeed, in my judgment, this is no longer an open question. The argument of counsel for the defendants appears to be completely answered upon the general question of jurisdiction involved by the reasoning of the supreme court of the United States in *Ex parte Yarbrough*, 110 U. S. 651, 4 Sup. Ct. Rep. 152, a case with which I am somewhat familiar because of the fact that, as district attorney, I conducted it for the government in the circuit court. The power exercised by the government in that case related to the elective franchise, but the principle authorizing its exercise is applicable to any other franchise of a citizen, and there is none more important to a large class of American citizens than the right to sue in the United States court. And we may remark that the ascertained facts in the controversy in which the decree was rendered, and the rules for contempt issued, furnish a most significant illustration of the importance of this right. The local prejudices against strangers and non-resident property owners, unreasonable as they are, confined as they necessarily must be to a small portion of the people, are sufficient in many cases to deny and utterly destroy the most valuable rights of the non-residents. To deny, therefore, in such cases the right of the non-resident to prosecute his remedies in the courts of the United States would be to deny his rights altogether, and to shut and to close to him the avenues to public justice. In the *Case of Yarbrough*, above quoted,

the statute itself was declared constitutional and valid, the opinion was unanimous; the great jurists among the supreme judges, whose habits of thought make them careful always with reference to the exercise of novel powers, either by congress or the courts, found no cause of dissent to the decision pronounced by Mr. Justice MILLER for the court in that case, a decision which has been reaffirmed again and again by the same elevated tribunal. In *U. S.* v. *Waddell*, 112 U. S. 76, 5 Sup. Ct. Rep. 35, which was a charge of conspiracy under the section now before the court to hinder a citizen of the United States of his right to establish his claim to certain lands of the United States under the homestead act, the court say, through Mr. Justice MILLER:

"The first question certified to us as to the constitutional validity of paragraph 5508 of the Revised Statutes was answered in the affirmative by the unanimous opinion of this court in *Yarbrough's Case*, 110 U. S. 651, 4 Sup. Ct. Rep. 152."

They say, further:

"The protection of this section extends to no other right, to no right or privilege dependent on a law or laws of a state. Its object is to guaranty safety and protection to persons in the exercise of rights dependent on the laws of the United States, including, of course, the constitution and treaties as well as statutes; and it does not, in this section at least, design to protect any other rights."

Of this class is the right of Norman W. Dodge to proceed to enforce the rights secured to him by the decree of the circuit court and the laws conferring jurisdiction on the court. No law of the state authorized or could authorize him to petition the United States court. His right, then, was not dependent on the laws of the state, but it was, in the language of the court in the *Yarbrough Case*, and reiterated in the *Waddell Case*, "dependent on the laws of the United States." And I repeat that, the demurrer admitting for its purpose the truth of the charge in the indictment that the conspiracy was had and carried out in part, at least, and that it was to injure and oppress Norman W. Dodge because of the exercise of such right, the matter of the indictment is within the purview of the statute, and is within the jurisdiction of the court.

It is urged, however, that there is a misjoinder of a count for conspiracy with a count for murder; that the punishment of the two offenses are different, and for this reason that the indictment must be quashed. On this subject counsel for defendants cite. *U. S.* v. *Scott*, 4 Biss. 29; *U. S.* v. *Jacoby*, 12 Blatchf. 491; *U. S.* v. *Burns*, 5 McLean, 23; *U. S.* v. *Nunnemacher*, 7 Biss. 129. On this subject it will, in our judgment, suffice to say that, while independent crimes cannot be joined in the same indictment where they are of different classes, with different penalties, yet, where a statute provides (as in that before the court) for the definition and punishment of a felonious conspiracy, and for a punishment of an additional character for an overt act of a highly criminal nature, when the latter is committed in pursuance of the conspiracy, it being one transaction the description of the crime as an entirety in the indictment is not only proper, but is necessary. Indeed, under section

5509 there could be neither punishment nor jurisdiction in the United States court unless the murder was committed as a part of the conspiracy. If it was so committed, congress having provided for its punishment as a part of the punishment for the conspiracy, the penalties cannot be said to differ, nor the offenses to be of a different class.

With relation to the two grounds of demurrer—that the decree which Norman W. Dodge was seeking to enforce is not set out in the indictment; and the other ground, that the statutes which give him the right he was seeking to exercise were not specifically described in the indictment—I do not think that they are well taken.

To the observations which have been so zealously urged to the effect that the pendency of this indictment is a grave instance of disrespect to the autonomy of the state, and the jurisdiction of the superior court of Dodge county, it will be, perhaps, sufficient to say that it can never be any reflection upon the state or its courts, that the general government will attempt to protect its citizens in the enjoyment of those rights secured to them by the constitution and laws of the common country. That it has this power we have seen. In the language of the supreme court of the United States in *U. S.* v. *Reese*, 92 U. S. 214–217, quoted by Mr. Justice LAMAR in his dissenting opinion in *Neagle's Case*, 10 Sup. Ct. Rep. 658, 676:

"Rights and immunities created by or dependent upon the constitution of the United States can be protected by congress. The form and the manner of the protection may be such as congress in the legitimate exercise of its legislative discretion shall provide. These may be varied to meet the necessities of the particular right to be protected."

In *Strauder* v. *West Virginia*, 100 U. S. 303–310, the court says:

"A right or an immunity, whether created by the congress or only guarantied by it, even without any express delegation of power, may be protected by congress."

We have seen that congress, in the legitimate exercise of its legislative discretion, has chosen to protect suitors in the courts of the United States in the exercise of their rights to prosecute their suits and actions in those courts, and neither the state nor any tribunal or officer thereof has any color of right to complain that the protection is extended. Indeed, it would occur to the impartial and observant mind that the officers of the state should experience a sense of patriotic gratification that the courts of the United States are sufficiently vigorous and vigilant to institute an investigation into an atrocious crime, such as this indictment describes, and the demurrer for its purposes admits to be true. The date of the alleged crime, or, rather, the terrible and distressing murder committed in its progress, occurred on the 7th day of October. The indictment in this court was filed on November 20th. If warrants had been issued and arrests made by the authorities of the state, the prisoners would not now be before this court. The notable solicitude, and I may say jealousy, exhibited in behalf of the dignity of the state court, expressed, as it is, not by the state or its authorities, but by the counsel for the parties

accused, has not had any considerable, or indeed appreciable effect upon the mind of the court while engaged in the consideration of the purely legal reasons which have impelled it to overrule the demurrer.