# CHARLESTON.

## STATE *v.* GEO. W. WISMAN.

Submitted January 24, 1923.    Decided February 20, 1923.

1.    INDICTMENT AND INFORMATION—*Indictment Charging Felonious Assault Held Sufficient.*

An indictment which lays the proper venue, and charges that certain persons therein named, on a stated day and year, in the county aforesaid, did feloniously and unlawfully combine, conspire and confederate together for the purpose of inflicting punishment and bodily injury upon G. A., and that in pursuance of said combination, conspiracy and confederation, they, naming the persons, on that day and year, in and upon one, W. A., the son of G. A., an assault did make, and him the said W. A. then and there feloniously, unlawfully and maliciously did shoot, cut, etc., with intent the said W. A. then and there to maim, disfigure, disable and kill, against the peace and dignity of the state, is good upon demurrer. (p. 185).

2. CONSPIRACY—*If Act of Conspirator in Carrying Out Common Purpose Terminates in Criminal Result, Though Not Intended. All are Liable.*

Where there is a combination and conspiracy between two or more persons to commit a crime, if the act of one done in carrying out the common purpose and design terminate in a criminal result, though not the particular result intended, all are liable. (p. 188).

3. ASSAULT AND BATTERY—*Where Evidence That Accused Acted in Self-defense, Instructions Properly Presenting Defense Should be Given, Although Evidence Preponderates for Prosecution.*

If, in a prosecution for a crime resulting from an alleged conspiracy, there is evidence tending to show that no conspiracy was formed, and that the accused was acting in self defense when the alleged crime was committed, it is not error to refuse an instruction which does not properly propound the law of such defense. If, however, the instructions properly propound the law of self defense they should be given, although the evidence may preponderate in favor of the prosecution. (p. 188).

4. SAME—*Instruction That Burden on Accused to Show That Conspiracy Did Not Exist and That the Injury was Not Inflicted Held Erroneous.*

Under such indictment it is error to instruct the jury that if they believe the prisoner unlawfully assaulted and inflicted bodily injury upon W. A., and that others jointly indicted with him were present when the assault was made, aiding and abetting, then the jury may presume that such assault was made and the injury inflicted in pursuance of a combination and conspiracy; and that if the jury finds that such facts existed, then the burden is upon the prisoner to show that such conspiracy did not exist and the injury was not inflicted in pursuance thereof; and unless he does so, or it appears from the whole of evidence and circumstances, they should find the prisoner guilty as charged in the indictment. (p. 194).

5. CRIMINAL LAW—*Instructions Must Not Submit Question of Law to Jury.*

An instruction must not submit a question of law to the jury.

## Error to Circuit Court, Putnam County.

93 W. Va.

George Wisman was convicted of felonious assault, and he brings error.

*Reversed and remanded.*

*B. J. Pettigrew, Hogg & Hogg, A. A. Lilly* and *Rummell & Blagg,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General, *John T. Simms, Chas. B. Aherns, John J. Coniff,* and *J. B. Handlan, amicus curiae,* for the State.

LIVELY, JUDGE:

At the October term of court, 1921, defendant was convicted on a charge of felonious assault upon Walter Adkins, and sentenced to imprisonment for five years.

The indictment charges that he and Herb Robinson, James Wisman and Charles Robinson combined, conspired and confederated together, in May, 1921, to inflict punishment and bodily harm upon Grant Adkins, and in pursuance thereof, on the same day, feloniously and maliciously assaulted Walter Adkins, son of Grant Adkins, with intent to maim, disfigure, disable and kill him.

Demurrer and motion to quash was overruled. It is insisted that the indictment is bad because it contains in one count two distinct offenses, one, a misdemeanor, being a conspiracy to inflict bodily harm upon Grant Adkins, a misdemeanor; and the other an assault, in pursuance of the conspiracy, upon Walter Adkins, the son of Grant Adkins, with intent to maim, disfigure, etc. The indictment is drawn under secs. 9 and 10 chap. 148, Code, familiarly known as the "Red Men's Act." The gravamen of the offense here charged is the felonious assault upon Walter Adkins. This is the crime for which the state seeks conviction and the allegation of conspiracy is but incidental thereto and is included therein. Counts charging a conspiracy and also the offense committed in pursuance thereof may be joined where both offenses are similar in nature and in mode of trial and punishment. *U. S. v. Lancaster,* 44 Fed. 885; *Combs v. Commonwealth,* (Ky.) 25 S. W. 276; *Thomas v. People,* 113

Ill. 531; *Commonwealth* v. *Rodgers,* 181 Mass. 184. In *U. S.* v. *Lancaster, supra,* it was urged that there was a misjoinder of a count for conspiracy with a count for murder, that the punishment of the two offenses were different and for that reason the indictment should be quashed.    The court said: "While independent crimes cannot be joined in the same indictment, where they are of different classes, with different penalties, where a statute provides, as in that before the court, for the definition and punishment of a felonious conspiracy and for a punishment of an additional character for an overt act of a highly criminal nature, when the latter is committed in pursuance of the conspiracy, it being one transaction, the description of the crime as an entirety in the indictment is not only proper but necessary."    The lesser crime of conspiracy here charged is included in the greater crime of malicious assault with intent to maim, disfigure, disable and kill. If the state had failed to prove the greater crime, the jury might have found that the conspiracy had been formed, and while no overt act had been committed in pursuance thereof, yet the defendant could have been guilty of the lesser offense and punished as for a misdemeanor. Our statute, sec. 18 of chap. 159, which was intended to cover inclusive offenses, provides: "If a person indicted for a felony, be by the jury acquitted of part and convicted of part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor."

As a general rule, two or more offenses cannot be joined in the same count.    But if the whole transaction be only parts of one fact of endeavor, all the parts may be stated together as one offense.    "No matters, however multifarious, will operate to make a declaration or information double, provided that all taken together constitute but one connected charge or one transaction." *Barnes* v. *State,* 20 Conn. 232; Bishop says this observation may be accepted as stating the rule, by adding thereto, "provided, also, that in any view which the law could take of the one transaction it may be regarded as constituting but one offense." See *Francisco v.*

*State,* 4 Zabriskie (N. J.) 30; 12 C. J. 580, sec. 95, title, "Where object of conspiracy is to commit a felony."

It is well settled that if a number of persons combine and conspire together to commit any unlawful act, and death happens in the prosecution of the design, it is murder in law, although the ·death happened collaterally, or beside the principal design. Wharton's American Criminal Law, Vol. 2, sec. 998; *Spies v. People,* 122 Ill. p. 1. In *Hanna v. People,* 86 Ill. 243, the court said: "If defendant and those indicted with him had a common design to do an unlawful act, then, in contemplation of law, whatever act any one of them did in furtherance of the original design, is the act of all, and all are guilty of whatever crime was committed." See to the same effect *McLeroy v. State,* 120 Ala. 274; *Carr v. State,* 43 Ark. 101; *U. S. v. Sweeney,* 95 Fed. 434; *U. S. v. Kane,* 23 Fed. 751. "Where two or more persons combine to do any unlawful act, if the act of one in furtherance of the common plan, terminate in a criminal result, though not the particular result intended, all are liable." *Carr v. State, supra,* Bishop Crim. Law, sec. 636, and authorities there cited.

As above stated, the offense charged in the indictment is a malicious assault upon Walter Adkins, and it is a well known rule that it is not requisite to charge in an indictment anything more than is necessary to accurately and adequately charge the offense; and when unnecessary averments or allegations are introduced they can be considered as surplusage, and as such disregarded. 1 Wharton's Crim. Proc. sec. 200. The words in the indictment that defendants "combined, conspired and confederated together for the purpose of inflicting punishment and bodily injury upon one Grant Adkins, and that in pursuance of said combination, conspiracy and confederation," could be left out as surplusage; indeed, they are not necessary to complete an indictment for malicious maiming, and without them the offense is charged.

Where two or more persons, acting with a common intent, jointly engage in a common undertaking and jointly commit an unlawful act each is guilty of the offense committed to the

same extent as if he were the sole offender. Each is responsible for the acts of the others. 16 C. J. p. 128. In order to show a community of the unlawful purpose, it is not necessary to show an express agreement or an understanding between the parties. A conspiracy or common purpose may be inferred from the circumstances; preconcert may be shown by circumstances as well as by direct evidence. *Gibson v. State,* 89 Ala. 121; *Howard v. Commonwealth,* 96 Ky. 19. Leaving out of the indictment the allegation of preconcert or conspiracy, and proceeding under the charge of malicious assault upon Walter Adkins, the presence of the defendant and those indicted jointly with him in the commission of the assault, each aiding and abetting the others and participating therein with common purpose, would justify a presumption that a common design and purpose to commit the assault had been formed. The presumption, of course, could be rebutted. "An indictment charging murder and conspiracy to commit murder is not demurrable as uniting the common law offense of murder with the statutory offense of conspiracy, since at common law the commission of murder by one of those conspiring to commit it makes all of the conspirators principals." *Combs v. Commonwealth* (Ky.), 25 S. W. 276.

We think the demurrer and motion to quash was properly overruled.

The remaining assignments of error insisted upon relate to the giving and refusing of instructions, and consideration by the judge of the instructions offered by the prosecution and defense in recess of the court and in the absence of the prisoner. In order to discuss the instructions a condensed statement of the facts shown would be proper. It appears that on the night before the commission of the alleged offense some controversy had arisen between some of the Adkinses and Wismans at a religious service held in the community, and mutual threats of violence had been made. On the morning of the affray, May 13, 1921, defendant, his son and the Robinsons, brothers-in-law of defendant, left defendant's home on horseback ostensibly for the purpose of going to the office of Squire Keeling, some miles away, where defendant

proposed to offer as bondsman for one, Willie Rogers, who was supposed to have a trial that day before Squire Keeling for an infraction of the prohibition law. There was evidence to the effect that defendant remarked before he left on horseback that there would be some trouble between the Wismans and Adkinses that day. They rode by the house of Grant Adkins, a distance of two or three miles, and, according to the statement of defendant, he learned by 'phone that the Rogers boy was not to have his hearing that day before Squire Keeling, and they changed their direction, going toward the store of George Hodges, which they reached about 1 o'clock in the afternoon. Grant Adkins said he was some distance from the store when defendant and his companions came near him on horseback and made some threat that they would catch him and kill him. He thereupon fled in the direction of the store, being on foot, and not traversing the road. He says the conspirators attempted to cut him off but failed because they had to follow the road in a roundabout way. He reached the store ahead of them, where he found his son, Walter Adkins, who had married the daughter of George Hodges. There were present in the store building Mrs. Hodges, her son, a boy about sixteen years old, Walter Adkins and his wife Gertrude, and himself, when the affray occurred. The alleged conspirators came near the store when three of them, including defendant, crossed a bottom which was plowed and which was a near way to the store from the road. They were crossing the small bottom in sight of the store about the time Grant Adkins reached the store. Defendant entered the store room and desired to purchase from Mrs. Hodges, who was in charge, something to eat for lunch. Grant Adkins and his son Walter and the latter's wife were in a room in the rear of the store separated therefrom by a partition and door, which room the Hodges used for dwelling purposes. Gertrude Adkins, anticipating trouble, began to cry, and when Mrs. Hodges left the store room to get a can opener which was in the kitchen, for the purpose of opening a can of potted ham, which had been called for by defendant, he followed her into the dwelling room, making the remark to her that "This won't amount to

much," when the affray began. The state's witnesses testified that the assault and shooting was begun by defendant, his son, and one of the Robinsons; while the witnesses for defendant state the reverse. It appears that during the fight defandant and Walter Adkins were down on the floor in serious combat, when James Wisman, son of defendant, shot and seriously wounded Walter Adkins, claiming that at the time he did the shooting he saw that his father was in imminent danger of being killed by Walter Adkins, who had his father by the throat with one hand and was about to stab him with a knife in the other; that the pistol with which he did the shooting belonged to Walter Adkins and had been knocked from his hand in the struggle. He claims that he picked the pistol up from the floor and did the shooting to preserve the life of his father. The testimony of the State's witnesses is entirely to the contrary.

It will not be necessary to go into all of the details of the fight for the purpose of this opinion. Enough is stated to show that the theory of the state and that of defendant are totally variant. According to the evidence of Walter Adkins and the other state witnesses to the immediate affray, defendant began the assault with a pistol in his hand which was seized by Walter Adkins, and while they were scuffling on the floor and after he had been twice shot in the back by James Wisman the pistol in the hand of defendant was discharged, the ball therefrom seriously wounding him (Adkins) in the hand which grasped the muzzle of the pistol, and immediately afterwards he was severely beaten over the head with the pistol by defendant. The state's evidence tended strongly to show that defendant and his companions left his home on the morning of the affray with the intention of inflicting punishment upon the Adkins family, and more especially upon Grant Adkins; that in pursuance of that conspiracy they chased Grant Adkins into Hodges' store and committed the assault upon him and his son, and that they were fully armed and prepared to carry out that design. On the contrary, the defendant and his companions all stated that they had no such design; that they started from home without weapons of any character, with the intention of attending the trial of

Willie Rogers before Squire Keeling; that when they neared the Hodges store they did not see Grant Adkins and made no threat against him and did not chase him to the store; that they did not know that he, or his son, or any of the Adkins family was in the store at the time they reached it; that defendant went to the store only for the purpose of procuring something for lunch and to purchase some tobacco desired by one of the party; that about the time defendant was entering the store his companions learned from a by-stander that the Adkinses were in the store, and three of them, James Wisman, his son and Herb Robinson immediately went to join defendant but about the time they reached the store the affray had begun with an attack on the defendant.

Defendant's seventh assignment of error is to the refusal of the court to give his instructions numbered 3 and 4, which are as follows:

"3. The Court instructs the jury that self defense under the law of this State extends not only to one's self but also to a member of one's family, and, therefore, if the jury find from the evidence that the defendant being without fault himself was assaulted by Grant Adkins and Walter Adkins, or either of them in the presence of the defendant's son, in such a manner and under such circumstances as to give the said son reasonable cause to believe and did believe that his said father was in danger of death or great bodily harm at the hands of said assailants, or either of them, and that such danger was imminent, then said son had the right to act upon such appearance and shoot the said Grant Adkins and Walter Adkins, or either of them, in order to preserve the life of his said father or to protect him from great bodily harm."

"4. The Court instructs the jury that if they believe from the evidence that George Wisman being without fault himself was assaulted by Walter Adkins and Grant Adkins, or either of them, in the presence of the son of said George Wisman and under such circumstances and in such a manner as to cause the said son to believe and he did believe that his said father was in danger of death or great bodily harm at

the hands of the said Grant Adkins and Walter Adkins, or either of them, and that such danger was imminent, then the said son had the right to act upon such appearance and shoot the said Walter Adkins and Grant Adkins, or either of them, in order to preserve the life of his said father or protect him from great bodily harm.''

These instructions were properly refused, because they do not correctly propound the law of self defense. They leave out the important element, that, even though the assault was made under such circumstances and in such manner as to give the son reasonable grounds to believe and that he did believe his father was in imminent danger of death or great bodily harm at the hands of the assailant, yet he cannot act upon such appearances and belief and shoot the assailant, unless he has reasonable grounds to believe and does believe that such shooting is necessary to preserve the life of the father or protect him from great bodily harm. There may be other means of warding off the danger imminent though it may be; and the son must have reasonable grounds to believe, and believe, that he must shoot or kill in order to preserve life or prevent great bodily harm. Counsel for defense urge that this element is included in the word "imminent," and cite in support thereof State v. Grey, 79 Pac. 53; State v. Foulerat, 23 South. 634; 27 Fed. Cas. 390. These cases accentuate the proposition that "imminent danger" means a danger that it imminent and must be instantly met. Under the pressure of immediate impending danger the one in danger may act. That is all true; but if he can avoid the imminent danger without slaying his adversary it is his duty to do so, however imminent and threatening the danger may be. Therefore, he must not only have reasonable grounds to believe, but must believe, that the killing is necessary to avoid the danger. State v. Cain, 20 W. Va. 679; State v. Lutz, 85 W. Va. 330; State v. Clark, 51 W. Va. 547. The state insists that the prisoner was not entitled to an instruction on the theory of self defense, even if it had been properly worded. It is argued that the son who is a co-conspirator with his father to commit a felony cannot place himself in the position of defending the

father when the state has made out a *prima facie* case
of conspiracy which is a question for the court.    But it
must be remembered that the defendant denied the forma-
tion of any conspiracy, and he supported the denial by the
testimony of several witnesses.    It was the theory of the
prosecution, and possibly that of the trial judge, that the
state having introduced evidence of a conspiracy, and made a
*prima facie* showing, then defendant could not rely upon self
defense.    Whether the defendant's instructions Nos. 3 and
4 were refused on this theory, or whether refused because
improperly drawn, does not appear.    At any rate, no in-
structions embodying self defense were given.    The prisoner
was denied this defense, which as we see it from the record
was one of his principal defenses, and of vital importance to
him.    He denied conspiracy, and asserted that he was at-
tacked without fault on his part.    It is more than likely
if instructions 3 and 4 had been refused because inaptly
drawn, defendant's counsel would have remedied the defect.
We think the prisoner was entitled to have proper instruc-
tions embodying the law of self defense, even though the
state had made out a *prima facie* case of conspiracy.    The
contention of the state is a repetition of that asserted by
the prosecution in *State* v. *Bingham,* 42 W. Va. 29.    In
discussing the question Judge Brannon said:    ''If Bing-
ham and his alleged confederates were on the ground, full
bent on executing the alleged conspiracy, yet, before overt
act, Yowell in fact made an assault on Bingham justifying
self defense, I do not see how Bingham would be guilty of
the felony contemplated by the statute.    I do not see how
the wrong of forming a conspiracy would go so far as to
taint his whole action with felony, and take away the right
of self defense born of Yowell's act before any overt act
of Bingham's towards executing the plan  of  conspiracy.
You could not attribute Bingham's acts, under such circum-
stances, solely to the conspiracy, and not to the exercise of
the right of self defense.    Bingham's evidence was that
Yowell made the first assault, and delivered a blow with his
cane; and it was error to tell the jury as a matter of law,

that if even Yowell did so the fact was immaterial.'' It may be true, as is argued, that the state's evidence of the formation of the conspiracy and of the attack made in pursuance thereof preponderated that of defendant, but that would not preclude the defendant from having his theory of the case go to the jury with proper instructions. It is well settled that where evidence is presented tending to support a particular theory of defense it is the duty of the trial court to give a requested instruction covering such theory. *State* v. *Alie*, 82 W. Va. 601; *State* v. *Cobbs*, 40 W. Va. 718; *Vinal* v. *Core*, 18 W. Va. 1. It must be conceded that there was appreciable evidence for defendant to support his theory that a conspiracy had not been entered into by him, and that the attack at the store was made upon him by the prosecuting witnesses, without fault on his part.

It is well established that what one may do for himself by way of self defense, he may do for a near relative. *State* v. *Greer*, 22 W. Va. 800.

State's instruction No. 3, given, is challenged as erroneous. It is as follows: ''The Court further instructs the jury that if they believe from the evidence in this case that the prisoner, George Wisman unlawfully assaulted and inflicted bodily injury upon Walter Adkins in the County of Putnam, on the 13th day of May, 1921, and that James Wisman and Herb Robinson, were present when said assault was so made by said Wisman upon said Adkins, and that they aided and abetted said Wisman in said assault and injury, either by preventing others from interfering to prevent or stop said assault, or by assisting in administering punishment to said Adkins themselves, then the jury may presume that said assault was made and said injury inflicted in pursuance of a combination and conspiracy between said prisoner, George Wisman, and the said James Wisman and Herb Robinson; and if you find such state of fact to have existed then the burden of proving that such combination and conspiracy did not exist, and that such assault was not made and such injury inflicted in pursuance thereof, is upon the prisoner, and unless the prisoner, George Wisman, shows that by satis-

factory proof that such combination and conspiracy did not exist, or it appears from the whole evidence and circumstances of the case, then the jury should find the prisoner guilty as charged in the indictment; but of all these facts the jury are the sole judges from the evidence introduced in this case.''

It will be noted that the prisoner is indicted for a conspiracy to inflict punishment upon Grant Adkins and in pursuance thereof did feloniously, unlawfully and maliciously shoot, cut, etc., Walter Adkins, the son of Grant Adkins, with intent the said Walter Adkins then and there to maim, disfigure, etc. This instruction is binding and tells the jury that if they find that the prisoner assaulted and punished Walter Adkins, the others aiding and abetting, the jury may presume that the injury was inflicted in pursuance of a conspiracy, and unless the prisoner rebutted the presumption, or the presumption was rebutted from all the facts in the case, then they should find him guilty as charged in the indictment; that is, they should find that the prisoner had conspired to inflict punishment upon Grant Adkins and in pursuance thereof had committed a felony upon Walter Adkins.

The fact that two or more persons met and assaulted Walter would not justify the conclusion beyond a reasonable doubt that they had conspired to inflict bodily injury upon Grant. It is true as stated in the instruction that where two or more persons are found together acting in unison and making an assault upon another person, it may be presumed, a presumption of fact, that they conspired to do so, and their acts are in pursuance of that conspiracy, but such fact would not warrant the assumption that they had formed a conspiracy to punish some other person. This instruction does that. Stripped of verbiage it tells the jury if they believe the prisoner and his companions were found unlawfully assaulting Walter Adkins and the prisoner does not rebut the presumption of a conspiracy to assault Walter, then they should find him guilty of forming a conspiracy to inflict bodily injury upon Grant. This is not the law. If

conspirators on their way to commit robbery, assault and injure some one while on the way, the assault in itself, does not convict them of the conspiracy to rob, and an instruction to find them guilty of a conspiracy to rob based on the fact of an assault would be error. We think it was error to give State's Instruction No. 3.

State's instruction No. 2, hereinafter quoted, does not have this vice. The combination and conspiracy in instruction No. 2 is the one set out in the indictment, that is, a conspiracy against Grant Adkins, and if that conspiracy was formed and in pursuance thereof injury was inflicted on Walter Adkins the conspirators would be guilty of a felony under the Red Men's Act, provided the assault on Walter was not justified. In instruction No. 3 there is no reference to a conspiracy against Grant Adkins, and yet that instruction is binding and tells the jury they should find the prisoner guilty of a conspiracy against Grant, the crime as charged in the indictment. However, both of these instructions ignore the defense of non-conspiracy and self defense. State's instruction No. 2, given over the objection of the prisoner, is assigned as erroneous. It reads as follows: "The Court instructs the jury that a conspiracy is a corrupt agreement or understanding entered into between two or more persons to do by concerted action something unlawful, or to accomplish some criminal or unlawful purpose, or to accomplish some purpose not unlawful in itself, but by unlawful means. And if the jury believe from the evidence in this case that the prisoner George Wisman on the 13th day of May, 1921, combined, conspired and confederated with James Wisman, Herb Robinson, and Charles Robinson or any one of them for the purpose of inflicting punishment and bodily injury upon Grant Adkins and that, in pursuance of such an understanding and combination, the prisoner, George Wisman or Herb Robinson, or James Wisman, or either of them, if all were present and acting together at the time, did on the 13th day of May, 1921, unlawfully shoot or otherwise wound, Walter Adkins, the son of Grant Adkins, in the store house of George Hodges, in the County

of Putnam, then the jury should find the prisoner, George Wisman, guilty as charged in the indictment.'' This instruction told the jury in effect that if they believed from the evidence that the defendant conspired with the three other persons indicted, or any one of them, for the purpose of inflicting bodily injury upon Grant Adkins, and that in pursuance thereof the defendant or either of the other persons, if all were present aiding, abetting and acting together, did unlawfully shoot and otherwise wound Walter Adkins, then the jury should find the defendant guilty as charged in the indictment.    One point of error is that the instruction should have included the word ''maliciously,'' that is, that the shooting and wounding was ''unlawfully and maliciously'' done. This instruction is substantially that given and approved in the case of *State* v. *Bingham, supra.* But in that case the assault was made upon Youell, the person against whom the conspiracy was alleged to have been formed, as set out in the indictment.  Under sec. 9 of chap. 148, Code, under which this indictment was drawn, a conspiracy to inflict punishment upon any person is a violation of law, and if no overt act has been performed in pursuance thereof it is a misdemeanor; but under section 10 of that chapter if punishment or any bodily injury is inflicted upon another person in pursuance of such combination or conspiracy, then the person inflicting the punishment and his co-conspirators, whether present or not, are guilty of a felony. And it would not be necessary to incorporate in an instruction that the punishment was maliciously done. The statute makes the inflicting of punishment or bodily injury in pursuance of such conspiracy a felony, and malice is presumed.   If, on the trial under sec. 10 it is shown that two or more persons were present, defendant being one, aiding the commission of the crime, it is presumed that the offense was committed in pursuance of such conspiracy, in the absence of satisfactory proof to the contrary.    The presumption of law may be rebutted.  But . it is insisted also that this instruction ignores the defense, and, being a binding instruction, should not have been given without containing therein the theory of the defense.   However, the instruction tells the jury that .

they must believe the acts of defendant were "unlawfully" done. This negatives the defense. But does it set out the theory of the defense with reasonable clearness? Whether the act of shooting Walter Adkins was lawful or unlawful was a question of law under the evidence. If, while in pursuance of their conspiracy to inflict punishment upon Grant Adkins they were attacked by Walter Adkins before any overt act on their part towards carrying out the conspiracy, and without fault on their part, then they had the right to defend, as clearly stated by Judge Brannon in the Bingham case. If in pursance of the conspiracy against Grant they began the assault or otherwise opened the affray by overt act, and they or any of them shot Walter the act was unlawful and under the Red Men's Act was presumed to be malicious. This instruction leaves it to the jury to decide the question of law, whether the act was lawfully or unlawfully done. Questions of law should not be submitted to the jury. It is the arbiter of facts. *Tracewell* v. *Co. Court,* 58 W. Va. 283; *Lawrence* v. *Hyde,* 77 W. Va. 639; *Mitchell* v. *Town Fon du Lac,* 16 Ill. 174; *Hudson* v. *Ry. Co.,* 55 Mo. 525; *Thomas* v. *Thomas,* 15 B. Mon. 178. While this instruction by the use of the word "unlawfully" was evidently designed to meet the defense, it is confusing and misleading in that respect, and does not draw the attention of the jury thereto with clarity and definiteness. It is binding, and under the well established rule should not ignore the defense. "An instruction given on behalf of the state directing the jury to find the defendant guilty if a certain state of facts is true, but which excludes from their consideration a good defense set up and relied upon by him, is eroneous." *State* v. *Price,* 83 W. Va. 71. See *State* v. *Alderson,* 74 W. Va. 732; *Bowles* v. *Commonwealth,* 103 Va. 816. Inasmuch as defendant's instructions in support of his claim of self defense were refused, apparently because the court thought he was entitled to none, and not because they were not properly formed, we think State's instruction No. 2 should have included fully and clearly that defense. The case seems to have been prosecuted and tried upon the theory that the gravamen of the offense was the

formation of a conspiracy to inflict bodily injury upon Grant Adkins, and therefore if a *prima facie* case of conspiracy was made out there could be no defense except to meet the *prima facie* case. Defendant's instruction No. 5 (given after refusal of his instructions Nos. 3 and 4 on self defense) told the jury that the gist of the offense alleged in the indictment was that of conspiracy. Generally a court should guard against giving an instruction which would withdraw from the consideration of the jury an issue or evidence which they are entitled to consider, and which in justice should be considered and passed upon by them. *Bird* v. *U. S.* 180 U. S. 356.

There are other assignments of error in the petition which are not mentioned in defendant's brief, and which may be considered as merely formal, and as abandoned. One relates to failure of the court to set aside the verdict because a member of the jury formerly had been convicted of some crime; another that the grand jury which returned the indictment was unlawfully constituted; another, that the court erred in not directing a verdict for defendant. These assignments, not pressed, will not be considered.

The remaining assignment is that the judge, in the absence of the prisoner, and during recess in the trial, considered and passed upon the instructions presented to him by the prosecution and defense, and in the presence of counsel read the same, signifying his opinion of those that should be given, and those refused, modifying some of them, and endorsing on each, over his initials, his action in relation there-to. The court afterwards was convened, the prisoner brought in, and those instructions marked "given" read to the jury, and those marked "refused" not read to the jury. The state insists that the passing upon these instructions was not a part of the procedure of the trial, and the presence of the prisoner was not necessary. The defense insists that it was a most vital stage of the trial, and the prisoner should have been present. In view of our disposition of the case, it is unnecessary to pass on this assignment as the alleged error will not likely occur upon a new trial.

We reverse the judgment, set aside the verdict, and award a new trial.

*Reversed and remanded.*