# CHARLESTON.

STATE *v.* J. G. FLETCHER.

(No. 6048)

Submitted January 15, 1929.   Decided January 22, 1929.

602

*Dice & Easley,* for plaintiffs in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, J. G. Fletcher, was tried, convicted and sentenced to confinement in the penitentiary for two years, upon an indictment charging that he "did feloniously, unlawfully, wilfully, deliberately and maliciously shoot, wound and maim one Polled Angus bull, the property of another person, to-wit: the property of one Woods Hinkle of the value of $50.00 against the peace and dignity of the State."

The evidence relied on for conviction shows that the defendant fired a shot gun, loaded with No. 6 bird shot, at a young bull (belonging to Woods Hinkle) while grazing on his premises about 75 yards away, and that some of the shot penetrated the scrotum of the animal, causing an infection which necessitated its castration about two months later.

According to the testimony of the defendant, which is not materially controverted, the bull had been breaking into his

enclosure, and destroying his garden and other crops, on an average of once a week for two months before the shooting; that he had thrice requested the owner, once in person and twice through the sons of the latter, to keep the animal at home; that the bull was, at the time of the shooting, in his garden and he fired the shots, at a range of 75 yards or more, with no intention of seriously injuring the animal, but solely for the purpose of causing it to take fright and keep away from his premises; and that after firing the shot, to which the bull gave little heed, he chased it off with rocks.

Two days after the shooting, Edmond Kershner, a veterinary-surgeon, called by Hinkle, removed several shot near the back bone of the bull. Dr. Kershner says that he observed that one shot had penetrated the scrotum but did not attempt to remove it because he "didn't think it was anything very serious at the time."

The defendant assigns error to the action of the trial court, (1) in overruling a demurrer to the indictment; (2) in admitting and rejecting evidence; (3) in refusing instructions offered in his behalf; and (4) in refusing to set aside the verdict on the ground that the evidence is not sufficient to support it.

A demurrer was interposed upon the theory that the indictment charges two offenses; one, by using the word, "maim" under section 25, chapter 145, and another, by employing the words "shoot" and "wound", under section 14, chapter 149, Code. The first statute reads: "If a person maliciously administer poison to, or expose it with intent that it should be taken by any horse, cattle or other beast, of another person, or if any person maliciously maim, kill, or cause the death of any horse, cattle or other beast, of another person, of the value of twenty dollars or more, he shall be confined in the penitentiary not less than one nor more than five years; and if of less value than twenty dollars, he shall be confined in jail not more than three months, and fined not more than fifty dollars, in the discretion of the court." The second act declares that: "If any person shall cruelly, unnecessarily, or needlessly beat, torture, torment, mutilate, kill or overload, overdrive or wilfully deprive of necessary sustenance, any horse or other do-

604

mestic animal, whether such horse or other animal be his own or that of another person, * * * he shall be guilty of a misdemeanor, and fined not less than five nor more than one hundred dollars, and at the discretion of the court or justice, may be imprisoned in the county jail not exceeding six months.''

The words ''shoot'' and ''wound'', neither of which are found in section 14, chapter 149, were evidently employed by the pleader merely to describe the manner in which the offense of maiming was committed, and should, therefore be discarded as surplusage. *State* v. *Wisman,* 93 W. Va. 183; *State* v. *Wisman,* 98 W. Va. 250. ''Matter which is merely explanatory, or amounts to mere conclusions, or is alleged by way of description or inducement, or *which is merely indicative of the manner in which the offense was committed,* does not create duplicity. The same is true of averments incidentally describing an offense for which a conviction is not sought, and which is not charged.'' 31 C. J. 775.

The assignments based upon the alleged improper admission and rejection of evidence cannot be considered for the reason that the same were not specifically assigned as grounds for a new trial nor incorporated in special bills of exception.

The defendant requested certain instructions, contrasting maiming with ordinary wounding or mutilation. These instructions were proper, not as indicating to the jury that they might convict the defendant of an offense (not charged in the indictment) under section 14, chapter 149, but for the purpose of directing an acquittal of the defendant if the jury should be of opinion from the evidence that his acts resulted merely in wounding or mutilating, as distinguished from maiming, the animal.

The bull, sixteen months of age, was the offspring of an Aberdeen (or Polled) Angus male and a Jersey cow. Upon the theory that the owner was keeping it for breeding purposes, the state claims that the act of the defendant, resulting in castration of the animal, constitutes maiming, under the statute. Assuming that the unauthorized castration of a pure bred male animal kept for breeding purposes constitutes maiming, under the statute, does the same rule apply in a

case like this where the altered animal is the product of the inbreeding of different strains  It is made unlawful under section 79, chapter 15-D, Code, ''for any person to keep any breeding animal for public service for pay, which is not pure bred and which has not been properly registered in accordance with this Act.''

For the rejection of instructions on behalf of the defendant, aforesaid, and because the evidence does not satisfactorily establish malice on the part of the defendant, the judgment complained of is reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*